# In re B-A-S-, Respondent

*Decided May 20, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien failed to establish that a foot injury he suffered on the day before his deportation hearing amounted to exceptional circumstances to excuse his failure to appear within the meaning of section 242B(f)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(f)(2)(1994), where he gave no explanation for neglecting to contact the Immigration Court before the hearing and did not support his claim with medical records or other evidence, such as an affidavit from his employer.

Maziar Mafi, Esquire, Santa Ana, California, for respondent

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEIL-MAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, GUENDELSBERGER, and JONES, Board Members Dissenting Opinion: ROSENBERG, Board Member.

HURWITZ, Board Member:

In a decision dated November 22, 1996, an Immigration Judge denied the respondent's motion to reopen the deportation proceedings. The respondent has appealed that decision. The appeal will be dismissed.

The respondent, a native and citizen of India, entered the United States without inspection on August 8, 1993. On June 19, 1996, the respondent was scheduled to appear for a deportation hearing before the Immigration Judge. At that time, he failed to appear. Consequently, the Immigration Judge conducted the hearing in absentia, as there was no reason evident for the respondent's absence. *See* section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994). The Immigration Judge found the respondent deportable as charged, concluded that he had abandoned any potential applications for relief, and ordered him deported from the United States.

On September 26, 1996, the respondent filed a motion to reopen before the Immigration Judge. *See generally Matter of Gonzalez-Lopez*, 20 I&N Dec. 644 (BIA 1993). The respondent argued that his motion should be granted because he failed to appear for his scheduled hearing owing to an injury that he sustained the day before the hearing. The Immigration Judge

denied the motion to reopen, and the respondent subsequently filed this appeal.

An order of deportation issued following proceedings conducted in absentia pursuant to section 242B(c) of the Act may be rescinded only upon a motion to reopen which demonstrates that the alien failed to appear because of exceptional circumstances, because he or she did not receive proper notice of the hearing, or because he or she was in Federal or State custody and failed to appear through no fault of his or her own. Section 242B(c)(3) of the Act. *See Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995); *Matter of Gonzalez-Lopez*, *supra.* The term "exceptional circumstances" refers to exceptional circumstances beyond the control of the alien, such as serious illness of the alien or death of an immediate relative, but not including less compelling circumstances. Section 242B(f)(2) of the Act. In determining whether exceptional circumstances exist to excuse an alien's failure to appear, the "totality of circumstances" pertaining to the alien's case must be considered. *Matter of W-F-*, 21 I&N Dec. 503, at 509 (BIA 1996).

In a sworn affidavit submitted in support of his motion to reopen, the respondent attested that on June 18, 1996, the day before the hearing, he accidentally tripped in the home of his friend and twisted his right foot. The respondent related that he suffered pain and was not able to go to work. Furthermore, he attested that because of "financial strain" he did not see a doctor, but took Tylenol caplets to ease the pain and had his foot massaged with oil by his friend. According to the respondent, he was unable to attend his scheduled hearing because of the injury to his foot. In support of his motion, the respondent also submitted a sworn affidavit from his friend, which corroborates his account of the events.

In his decision, the Immigration Judge stated that he was "unconvinced that respondent's injury constitutes a serious illness" which rises to the level of exceptional circumstances as defined in section 242B(f)(2) of the Act. The Immigration Judge also questioned why the respondent failed to contact the Immigration Court concerning his inability to appear.

Upon review of the record, we find that the respondent has failed to establish exceptional circumstances for his absence at the scheduled hearing. In general, a "twisted foot" would not rise to the level of a serious illness within the meaning of the Act. *See* section 242B(f)(2) of the Act Assuming that a twisted foot can amount to exceptional circumstances, the respondent has not provided sufficient evidence that his injury falls into this category. Specifically, the evidence submitted does not indicate that the injury to the respondent's foot was severe enough to prevent his attendance at the scheduled hearing. Despite the alleged seriousness of the injury, the respondent attested that the only treatment he received involved massaging the foot with oil and taking Tylenol caplets to alleviate his pain.

The respondent's motion was unsupported by any medical evidence. Where an alien argues that his failure to appear resulted from a "serious ill-

ness," we normally would expect specific, detailed medical evidence to corroborate the alien's claim. This is particularly true where, as in the instant case, the ailment at issue is an allegedly debilitating physical injury, the severity of which could readily be confirmed through medical examination. In addition, although the respondent asserted that he was confined to bed for 2 weeks and was unable to go to work, he did not provide any documentary evidence from his employer to corroborate his claim. These considerations lead us to conclude that the respondent has not met his burden of proving "exceptional circumstances" for his nonappearance at the scheduled hearing.

Moreover, we note that the respondent presented conflicting statements regarding the circumstances under which he sustained the injury at issue. In his motion, the respondent, through counsel, asserted that he "tripped accidentally while on work on June 18, 1996." However, in the two affidavits offered in support of the motion, the respondent and his friend both attested that on June 18, 1996, the respondent tripped accidentally in his friend's home The respondent does not explain this discrepancy on appeal.

We note further that the respondent did not indicate that he made any attempt to contact the Immigration Court, either on the day of his hearing or immediately thereafter, to alert the court to his inability to attend or to explain the reasons for his absence. Upon consideration, we find that the respondent's failure to promptly contact the Immigration Court further undermines his claim. *See De Morales v. INS*, 116 F.3d 145, 149 (5th Cir. 1997) (holding that aliens did not establish "exceptional circumstances" warranting reopening under section 242B of the Act where, after failing to appear for scheduled deportation hearing, "they made no effort to contact the court beyond a cursory search for the phone number"). Notifying the Immigration Court of the respondent's unavailability is a minimal and logical step that, if not taken, is a factor which tends to undermine a claim of exceptional circumstances.

The respondent did not file his motion to reopen, which sets forth his explanation for failing to appear, until more than 3 months after the June 19, 1996, in absentia hearing. We do not discount that the respondent had 180 days from the date of his missed hearing to file a motion to rescind and reopen based on exceptional circumstances. *See* section 242B(c)(3)(A) of the Act. However, his failure to promptly contact the Immigration Court, coupled with his failure to offer reasons for not contacting the court as soon as possible, demonstrate that the respondent did not exercise sufficient diligence in attempting to avoid an in absentia deportation order. Although diligence is not a statutory requirement, we find that this lack of diligence is a factor that undercuts the respondent's claim, given the entirety of the record before us, including the lack of medical evidence to support the respondent's claim of exceptional circumstances. *See Matter of W-F-, supra.*

Based on the foregoing, we find that the respondent has not established

that he failed to appear for his hearing owing to exceptional circumstances as required by section 242B(f)(2) of the Act.[1]  Accordingly, the appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

Board Members Edward R. Grant and Lori L. Scialabba did not participate in the decision in this case.

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

Once again, the Board equivocates. A majority of the Board acknowledges that, although a "twisted foot" *generally would not support* a finding of "exceptional circumstances." given adequate evidence, *it might constitute* such circumstances. The problem is, the evidence required by the majority is not present in the record in this case, so the majority never reaches the issue of whether this form of injury meets, or ever could meet, the "exceptional circumstances" standard.

In today's holding, contrary to notions of fair play acknowledged in other of our precedents, the majority overlooks the fact that the respondent had no notice of the evidentiary requirements we shall apply to a respondent, who was prevented from appearing before the Immigration Court because of an injury or illness for which he could not afford medical care. *Cf., e.g., Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997) (remanding record in which new standards implementing burden of proof pertaining to documentation of asylum application are pronounced and existing standards are clarified); *Matter of H-*, 21 I&N Dec. 337 (BIA 1996) (remanding to allow the Immigration and Naturalization Service a second opportunity to meet its burden to rebut a regulatory presumption).

Rather, the majority apparently expects that the respondent should have anticipated, surmised, or somehow foreseen that his own sworn statement would not be enough and that he should have consulted a physician. In addition, in light of our decision in *Matter of J-P-*, 22 I&N Dec. 33 (BIA 1998), a companion case to this precedent, he should have known that the fact he was unable to go to work and that he stated as much in a sworn statement would not be enough unless he also provided an employer's letter.

The respondent provided a sworn affidavit in support of his motion to reopen attesting to his injury and debilitation. He also provided a sworn

---

[1]Contrary to the dissent's view that we are adding requirements and criteria to the statute, the Board is, in fact, applying the established statutory standard of exceptional circumstances which is defined in some detail at section 242B(f)(2) of the Act.

affidavit from a friend who was with him when he injured his foot and cared for him during the 2-week recovery period. According to the majority, he should have presented affidavits from some other third parties or medical experts, or provided some even more probative form of evidence substantiating his injury and his inability to go to work. *Matter of J-P-, supra.* Certainly, the fact that he indicated in a sworn statement that he relied on Tylenol and oil massages from a friend, who provided a sworn affidavit of his own confirming these circumstances, was not adequate under the nebulous evidentiary standard advanced by the majority. *Cf. Matter of Grijalva,* 21 I&N Dec. 27 (BIA 1995).

The majority seems to state that if an injury is treated only with Tylenol and massage, it cannot be serious enough to be considered "exceptional circumstances." But an ankle or foot injury can be extremely painful, swollen, and inflamed, making dressing, standing or walking virtually impossible.

Once again, however, the majority emphasizes that there was no "medical evidence" to explain the respondent's failure to attend his hearing. It should be clear by now that no matter what the majority states directly, we require specific, explicit, and detailed evidence from a medical doctor or a licensed medical facility before we will accept an excuse of illness as constituting "exceptional circumstances," or even evaluate the illness or injury on its merits under that standard. We also now require that the illness be so debilitating that the respondent cannot attend work, if he is employed, and, we require that he provide evidence that he was unable to go to work because of the injury or illness, including confirmation from his place of employment.

In addition, the respondent had better be certain that he provides a consistent explanation for his injury or illness, or explains any conceivable inconsistency or "discrepancy." *See Matter of S-A-*, 21 I&N Dec. 1050 (BIA 1997). Moreover, we will determine on appeal what statements or which evidence constitute discrepancies, and we will not remand to obtain clarification of any perceived discrepancies. Nevertheless, it should be noted that the "discrepancy" cited by the majority in this case is not an inconsistency in the evidence presented. The respondent, at paragraph 5 of his affidavit, and his friend at paragraph 3 of his affidavit each state that the respondent was injured at his friend's home. The "discrepancy" if it is more than a mere error, is found in the motion prepared by the respondent's attorney, which is not evidence. *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503 (BIA 1980). This error is not repeated in the respondent's brief on appeal which states consistently the respondent suffered the injury while visiting his friend.

Furthermore, the majority emphasizes that there is no evidence that the respondent attempted to contact the Immigration Court to explain his absence or his inability to attend his hearing Again, the majority imposes its "calling" rule. As it did in *Matter of J-P-, supra*, the majority, citing *De*

*Morales v. INS*, 116 F.3d 145 (5th Cir. 1997), opines that because the respondent did not contact the Immigration Court to alert the court of his inability to attend the proceeding, the respondent's claim of exceptional circumstances is undermined. In the absence of evidence of fabrication of an injury or illness, however, I fail to see how failing to contact the court makes either a heart attack, anaphylactic shock, or a foot injury more or less "exceptional."

As I indicated in *Matter of J-P-*, *supra* (Rosenberg, dissenting), at a minimum, calling the Immigration Court is a new requirement not articulated in the statute or in any regulation promulgated by the Attorney General. The reasonableness of such a requirement, assuming we were to impose it *prospectively*, would depend on whether there was evidence a respondent had a telephone, or access to one, and had the language ability to use it. Although the majority does not appear to recognize it, there is an obvious difference between a "calling" requirement when one is on the road on his or her way to court and when one is housebound with a nonambulatory injury. Furthermore, as I stated in *Matter of J-P-*, I doubt that, as a practical matter, the Office of the Chief Immigration Judge is prepared to record such calls with the accuracy that would be required were we to invoke such a requirement as an essential element of veracity testing. *Cf. Matter of Villalba*, 21 I&N Dec. 842 (BIA 1997) (Rosenberg, dissenting),

In any event, as I also noted in *Matter of J-P-*, *supra* (Rosenberg, dissenting), this appeal arises in the jurisdiction of the United States Court of Appeals for the Ninth Circuit.[1] In *Arrieta v. INS*, 117 F.3d 429, 432 (9th Cir. 1997), the court stated that a sworn statement by the respondent concerning her failure to appear at her hearing, made when she was unaware of any other requirements, was adequate to support her case and deserved being remanded for consideration by the Board.

Although the failure to appear in this case does not involve a claim of inadequate notice, but that of exceptional circumstances, each is a basis on which an individual ordered deported in the course of an in absentia hearing may establish the propriety of rescinding the order and reconvening the hearing according to the statute. *See* section 242B(c) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(1994). The essence of the ruling of the Ninth Circuit in *Arrieta v. INS*, *supra*, is that our decision in *Matter of Grijalva, supra*, requires consideration of sworn statements of the

---

[1]Only recently, the Board majority suggested that a cited case that favored sustaining the respondent's appeal was of less force because it was decided out of circuit, and rejected the reasoning of the Ninth Circuit Court of Appeals. *Cf. Matter of A-E-M-*, 21 I&N Dec. 1157 (BIA 1998), Not so, as I noted in my dissent in that case, when such citation supports the decision of the majority and, in particular, when the out-of-circuit decision supports a denial of relief. *Cf. id.* (Rosenberg, dissenting) (addressing the majority's disapproval of out-of-circuit citations).

respondent concerning his reasons for failure to appear.[2] Those evidentiary requirements suggest that a sworn statement from the respondent, as appears to have been provided here, should support an affirmative defense to failure to appear due to exceptional circumstances. *Id.*

The point is, the respondent provided his sworn statement concerning the disability that made him housebound and prevented him from appearing on the appointed hearing date. At the time he did so, he was not on notice that more than such a statement was required of him. The Ninth Circuit has recognized that being put on notice of the requirements we are going to impose is essential to fairness. *Arrieta v. INS, supra.* In addition, the majority now imposes a new "diligence" rule, making it essential that the respondent contact the Immigration Court and quickly file his motion under section 242B(c)(3), notwithstanding the 180-day statutory period provided, or be considered a slacker, who will be treated adversely as a matter of the "totality of the circumstances."

In my view, the majority's suggested requirements impose an excessively high evidentiary test to be met by a respondent who provided sworn statements concerning his illness, explaining its severity and why he did not seek medical treatment. Nevertheless, even assuming that according to the majority, this standard is an acceptable one, the critical issue is how the Board should go about announcing such evidentiary requirements in deportation and removal hearings. This question raises issues of constitutional proportions *See Blancada v. Turnage*, 891 F.2d 688 (9th Cir. 1989). Under these circumstances, at a minimum, I believe it proper that we remand the case on appeal to allow the respondent an opportunity to comply with our newly enunciated criteria.

Moreover, the respondent repeatedly has sought an opportunity to present his asylum application and be heard on his claim of persecution before the Immigration Judge. As I stated in my dissent in *Matter of J-P-, supra*, even had the respondent been given the proper oral warnings concerning forfeiture of the right to present any claims he might have for relief from deportation as required by section 242B of the Act, that is not the end of the matter. Although the statute precludes certain forms of discretionary relief for 5 years when a respondent has been given proper oral and written notice of the requirement that he appear for his hearing or for any other obligatory purpose addressed in the statute and fails to appear, these preclusions do

---

[2]In that precedent, we stated unequivocally that the presumption of effective service may be overcome by the affirmative defense of nondelivery or improper delivery by the Postal Service. To support such an affirmative defense, the respondent must present substantial and probative evidence such as documentary evidence from the Postal Service, *third party affidavits*, or *other similar evidence* demonstrating that there was improper delivery or that nondelivery was not due to the respondent's failure to provide an address where he could receive mail *Matter of Grijalva, supra.*

not apply across the board. *Compare* section 242B(e)(1) of the Act (refer-ring to oral and written notice required under section 242B(a)(2)) *with* sec-tion 242B(e)(4)(B) (referring to oral and written notice of an asylum hear-ing). In the event of a respondent's failure to appear, the forms of relief pre-cluded after entry of an in absentia order cover voluntary departure, sus-pension of deportation, and adjustment of status, including registry. *See* sec-tion 242B(e)(5) of the Act. Nowhere does the statute bar consideration for or granting of asylum, nor should it.[3]

Denial of reopening of proceedings before the Immigration Judge for an asylum hearing is not one of the consequences listed in section 242B(e)(5) that is triggered by failure to appear for a deportation proceed-ing. Furthermore, denial of reopening to apply for asylum is not a conse-quence even of failure to appear for an asylum hearing addressed at section 242B(e)(4) of the Act. Precluding reopening either to schedule, or to reschedule and reconvene an asylum hearing is not authorized by the statute. *See* Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75 (1993) (recognizing that Congress intended to afford asylum-seekers enhanced protection). Consideration of the treatment of access to an asylum hearing before an Immigration Judge in the final bill which was enacted as section 242B of the Act reveals the special treatment Congress afforded asy-lum-seekers.[4]

The language of the sections of the statute before us is plain, and reflects substantive distinctions between the mandate to order deportation in

---

[3]A failure to appear that is excused under any of the three bases contained in section 242B(c)(3) results in rescission of the deportation order and reopening of the proceedings for purposes of determining both deportability and eligibility for asylum or any form of discre-tionary relief otherwise precluded. A failure to appear for a hearing in which written notice was properly given and not excused, *but in which oral notice was not properly given or in which the form of relief sought is not covered in section 242B(e)(5),* may result in reopening of the proceedings for purposes of entertaining any applications for relief from deportation. *See* 8 C.F.R. § 3.2 (1997) (governing motions to reopen generally). At a minimum, a *motion to reopen* for the purpose of applying for asylum or certain forms of discretionary relief for deportation may be filed and granted in a case conducted in absentia, as long as the relief sought is not precluded expressly by the terms of the statute. Such a motion shall not be grant-ed *unless* such evidence "is material and could not have been presented" at the former hear-ing, and if it appears that the "right to apply for such relief was [not] fully explained to [the movant] *and an opportunity to apply therefore [sic] was [not] afforded,"* and relief is war-ranted in the exercise of discretion 8 C.F.R. § 3.2(c)(1) (emphasis added).

[4]The conference committee incorporated the 5-year bar to all forms of relief originally contained in the Morrison bill, but dropped asylum from the list of relief barred. Notably, the original GAO draft had permanently barred all forms of relief for 5 years following a nonap-pearance. *See also* H.R. 4300, 101st Cong. § 402(a)(3)(E)(iv)(1990) (original Morrison bill). The Smith bill, H.R. 5284, 101st Cong. § 4(b) (1990), and the Brooks bill did not meaning-fully affect eligible asylum-seekers H.R. Rep. No. 101-681 (1990).

the face of an unexcused failure to appear for a hearing in response to proper notice, and the imposition of attendant consequences which attach to certain phases of the hearing and certain forms of relief from deportation. *See Lindh v. Murphy*, 521 U.S. 320 (1997) (emphasizing that language included in one section of a statute and excluded in another is to be given different meaning and effect). If a motion to rescind an in absentia finding of deportability under section 242B(c)(3) were interpreted as preliminary to reopening to accept an asylum application and/or hear an asylum claim, section 242B(e)(4) of the Act would be rendered surplusage. In addition, both Congress and this Board have recognized our domestic and international obligations not to expel and return an individual whose life or liberty would be threatened or endangered in his or her home country. *Matter of Q-T-M-T-*, 21 I&N Dec. 639 (BIA 1996); *see also id.* (Rosenberg, dissenting). Our construction of statutory language should take into account the design of the statute as a whole and give meaning to all its sections, rendering no section surplusage. *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988); *see also Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561 (1989) (emphasizing that "whole statute" interpretation dictates that statutory sections should be read in harmony to achieve a harmonious whole). Consequently, we cannot ignore the fact that, even after proper oral and written warnings have been given, neither sections 242B(e)(1) nor 242B(e)(4) render a respondent ineligible for asylum protection, or preclude a respondent from seeking to reopen the proceedings for an asylum hearing. As exclusive jurisdiction over such asylum applications remains with either the Immigration Judge or the Board of Immigration Appeals once an Order to Show Cause and Notice of Hearing (Form I-221) has been served and proceedings commenced, it is only the Immigration Judge or the Board that is capable of giving meaning to the plain language and structure of the statute indicating that the opportunity to apply for asylum has not been foreclosed by the operation of section 242B of the Act. *See* 8 C.F.R. §§ 3.1(b), 3.2, 3.14(b), 208.2(b) (1997).

The record reflects that the respondent is an asylum-seeker who submitted an application to the Immigration and Naturalization Service that was referred to the Immigration Court.[5] Under these circumstances, I can-

---

[5]Lest there be any question, the issue of the respondent's being an asylum applicant has been raised before the Board, and, on appeal, a court of appeals should have jurisdiction to review such legal claims. *See Urbina-Osejo v. INS*, 124 F.3d 1314, 1317 (9th Cir. 1997) (finding jurisdiction in a claim raised under section 242B where, notwithstanding the fact that the Board did not address the issue of lack of knowledge of the requirement in its decision, the change of address requirement was raised, and the Service neither challenged nor contradicted the evidence); *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994) (holding that the exhaustion requirement will not apply where there is a constitutional challenge to the Immigration and Naturalization Act or procedures of the Immigration and Naturalization

not agree that the respondent should be prevented from presenting his asylum claim before the Immigration Judge *See* section 242B(e)(4)(B) of the Act.[6] Any attempt to preclude him from such an opportunity raises questions concerning violation of the statute, as well as the possible violation of our international obligations not to return individuals to their country of origin when they have contended that they have suffered or would face imminent persecution there. *See Matter of J-P-, supra*, at 47 (Rosenberg, dissenting).

In conclusion, I believe that the requirements we impose interpreting and implementing the statute should be reasonable, and that we should impose these requirements only after giving fair notice of what we require. Fair consideration should be given to motions submitted according to existing standards, and pending cases should not be rejected on the basis of newly articulated rules. I believe, also, that we must give all of the statutory provisions meaning.

The provisions authorizing in absentia hearings and imposing consequences on respondents who fail to appear certainly reflect Congress' desire for a timely and efficient deportation hearing process. Nevertheless, as the Supreme Court has noted, "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The same can be said about the right to a hearing before an Immigration Judge on the allegations and charges in the Order to Show Cause, and the opportunity to apply for asylum or other relief from deportation For the reasons stated in *Matter of J-P-, supra* (Rosenberg, dissenting). I would remand this case.

---

Service); *Castillo-Villagra v. INS*, 972 F.2d 1017, 1024 (9th Cir. 1992) (finding that the petitioners did not bypass the Service, the Service bypassed them and stating that "exhaustion of administrative remedies by a motion to reopen may be required as a matter of prudence in order to develop a proper record, prevent deliberate bypass of the administrative scheme, and allow the agency to correct its own mistakes"); *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990).

[6]I note in this regard that, in fact, the 180-day from order of deportation time limitation which applies to motions to rescind for exceptional circumstances is conspicuously absent from the statutory language in section 242B(e)(4) of the Act, which talks of exceptional circumstances with no mention of a time limit.