**Teresa de Jesus CHETE JUAREZ, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 02–72506.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 1, 2004.

Filed July 19, 2004.

Raul E. Godinez, Los Angeles, CA, for the petitioner.

Luis E. Perez, (Argued) and Edward C. Durant (Brief) Office of Immigration Litigation Civil Division, U.S. Dept. of Justice, Washington, DC, for the respondent.

Before GOODWIN, PREGERSON, and TALLMAN, Circuit Judges.

PREGERSON, Circuit Judge.

Petitioner, Teresa de Jesus Chete Juarez ("Petitioner"), a citizen of Guatemala, petitions for review of Immigration Judge Richard Walton's (the "IJ") denial of her motion to reopen. We have jurisdiction over this unusual case under 8 U.S.C. § 1105a, and we grant the petition.

## BACKGROUND

Petitioner entered the United States without inspection in August 1985, and has lived in the United States since that date. Petitioner is married and has two United States citizen children, ages twelve and fifteen. Petitioner has been active in her children's lives and in her community; she has contributed to her children's financial support and care, volunteered at her children's Head Start program, attended literacy classes, volunteered at a food pantry, and led a children's program at her church. In addition, Petitioner has worked steadily, paid taxes, has not received public benefits, and has not committed any crimes.

On August 30, 1995, the Immigration and Naturalization Service ("INS") issued an order to show cause as to why Petitioner should not be deported. On June 26, 1996, Petitioner conceded that she was deportable and applied for suspension of deportation based on extreme hardship to herself and her children.

On June 27, 1996, the IJ found that Petitioner was ineligible for suspension of deportation. Specifically, the IJ decided that Petitioner's 45–day trip to Guatemala to visit and nurse her mother, who had suffered a stroke, was not a "brief" or "casual" departure, and therefore that Petitioner did not meet the "continuous physical presence" requirement for suspension of deportation. Because Petitioner had

previously conceded deportability, the IJ ordered her deported.

On July 8, 1996, Petitioner filed a pro se appeal to the Board of Immigration Appeals ("BIA"). Years later, in 1999, Petitioner moved to a new address. In a declaration, Petitioner stated that she completed a change of address form at that time. The Immigration Court did not receive the form.

On April 2, 2001, almost five years after the IJ's deportation order, the BIA reversed that decision, holding that Petitioner's departure was "brief, casual, and innocent" and did not meaningfully interrupt her continuous presence in the United States. The BIA remanded for consideration of the other aspects of Petitioner's application for suspension of deportation. Later that month, the Immigration Court sent a hearing notice by certified mail to Petitioner's old address. The notice was returned to the court "unclaimed."

When Petitioner failed to appear for the scheduled hearing, the IJ ordered her deported *in absentia* and sent notice of the deportation order to Petitioner's old address. Petitioner did not receive the notice. The INS later sent a notice to the same address telling Petitioner when to report for deportation. According to Petitioner, a former neighbor gave her this second notice when she was visiting her old neighborhood. Petitioner filed a motion to rescind the deportation order and to reopen her case. The INS opposed her motion, arguing that she did not establish that exceptional circumstances or ineffective service of the hearing notice caused her failure to appear.

On December 20, 2001, the IJ denied Petitioner's motion to reopen. The BIA affirmed without opinion, and Petitioner timely appealed to this court.

### STANDARD OF REVIEW

■ Because the BIA affirmed without opinion, this court directly reviews the immigration judge's decision as though it were the decision of the BIA. *Falcon Carriche v. Ashcroft,* 350 F.3d 845, 855 (9th Cir.2003). This court reviews denial of a motion to reopen for abuse of discretion. *Varela v. INS,* 204 F.3d 1237, 1239 (9th Cir.2000). An immigration judge abuses his discretion when he acts "arbitrarily, irrationally, or contrary to law." *Singh v. INS,* 213 F.3d 1050, 1052 (9th Cir.2000).

### DISCUSSION

■ The IJ should have recognized that exceptional circumstances justify granting Petitioner's motion to reopen. In this unusual case, denial of Petitioner's motion was arbitrary and irrational.

Petitioner's order to show cause was issued before the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") became effective.[1] Therefore, pre-IIRIRA rules regarding motions to reopen apply here. Under § 242B(3) of the Immigration and Nationality Act,[2] the court should grant a motion to reopen an *in absentia* order where "exceptional circumstances" exist or where the alien was not afforded statutorily required notice.

■ The pre-IIRIRA exceptional circumstances rule allows the court to reopen a case based on a compelling factual situation. *See* 8 U.S.C. § 1252b(f)(2) (repealed 1996). The court examines the "particu-

---

1. The INS issued the order to show cause on August 30, 1995, and IIRIRA became effective on April 1, 1997.

2. INA § 242B(c)(3), Pub.L. 101–649, 104 Stat. 5061 (1952) (codified as amended at 8 U.S.C. § 1252b(c)(3) (1995)) (repealed 1996).

larized facts presented in each case" to determine if exceptional circumstances exist. *Singh,* 213 F.3d at 1052.

■ The text of § 1252b(f)(2) suggests that the exceptional circumstances supporting a motion to reopen must relate to the reason for missing the hearing, But we made clear in *Singh v. INS,* 295 F.3d 1037, 1038–40 (9th Cir.2002), that we consider all exceptional—i.e., compelling—circumstances relevant to a petitioner's motion to reopen. A motion to reopen may be supported by exceptional circumstances even where the petitioner missed her hearing because of unexceptional circumstances, for instance, misunderstanding the scheduled time of her hearing. *Id.*

*Singh* presented unusual facts like those presented here. In *Singh,* the IJ denied a motion to reopen an *in absentia* deportation order where Singh appeared at 1:00 p.m. for a hearing scheduled two hours earlier, and the BIA affirmed. *Id.* at 1038–39. On appeal, we concluded that the BIA abused its discretion by failing to find "exceptional circumstances" in the compelling nature of Singh's situation. *Id.* at 1040. Specifically, Singh had diligently appeared at five previous hearings, and the hearing he missed was the "culmination of years of efforts" to obtain legal status. *Id.* at 1038, 1040. Singh had no reason to try to delay his hearing and had nothing to lose by appearing in court. In addition, the deportation would have broken-up Singh's family or caused the forced deportation of Singh's wife and children, who were all United States citizens. *Id.* at 1040. Finally, Singh appeared eligible for the relief he sought; indeed, as the beneficiary of an approved visa petition, Singh would not have been deported but for his failure to appear. *Id.* at 1039. For all those reasons, we concluded that denial of

the motion to reopen was "arbitrary and irrational." *Id.* at 1040.

We have no trouble concluding that, like in *Singh,* the circumstances surrounding Petitioner's case render it exceptional. Petitioner appeared for every scheduled hearing (except the last, of which she received no actual notice), including three hearings before the IJ and her asylum interview. The hearing Petitioner missed represented the culmination of years of efforts to regularize her status, and she had no reason to try to delay the hearing. She had prevailed on appeal before the BIA and could finally proceed with her request for relief. Because she had already conceded deportability, she could gain no advantage by evading the hearing.

Further, had Petitioner been present, the IJ likely would have granted Petitioner the relief she sought. Petitioner met the statutory requirements for suspension of deportation: she had been continuously physically present in the United States for over seven years, had no criminal record, and is mother to United States citizen children. The only question was whether the IJ would find that deportation would cause extreme hardship to Petitioner and her children.

■ The circumstances of Petitioner's case suggest that the IJ likely would have concluded that such hardship existed. The extreme hardship requirement for pre-IIRIRA suspension of deportation permits relief under a broad range of circumstances; it is substantially more permissive than today's requirement of "extreme or exceptionally unusual hardship." *Lopez–Urenda v. Ashcroft,* 345 F.3d 788, 791–92 (9th Cir.2003). The pre-IIRIRA standard permits the immigration judge to consider hardship to the alien as well as hardship to any of the alien's United States citizen relatives. *Matter of Monre-*

*al,* 23 I. & N. Dec. 56 (BIA 2001).[3] The court considers the alien's length of residence in the United States and her ties to this country. *Matter of Anderson,* 16 I. & N. Dec. 596 (BIA 1978). The court also weighs the alien's involvement and position in her community, as well as her immigration history. *Id.* Extreme hardship to an alien's school-aged children is considered especially serious, because deporting a parent forces a United States citizen child to choose between moving to a new culture and being separated from a parent. *See Jara–Navarrete v. INS,* 813 F.2d 1340, 1343 (9th Cir.1986) (citing a psychological report stating that a child, *from age six on,* is subject to rejection by his peers if forced to adjust to a new culture after he has adopted the culture of another country); *Barrera–Leyva v. INS,* 637 F.2d 640, 644 (9th Cir.1980) (weighing the hardship involved in breaking marital and parental ties as well as the difficulty of forcing older children to adjust to a new country).

The record shows that Petitioner was active in her children's lives and in her community. She contributed to her children's financial support and care, volunteered at her children's Head Start program, and attended literacy classes. She also volunteered in a food pantry and led a children's program at her church. Petitioner worked steadily, and she and her husband paid taxes. She did not receive public benefits while in this country and did not commit any crimes.

Further, requiring Petitioner's school-aged children,[4] who were born in the United States, to move with her to Guatemala would present an extreme hardship to the children; forcing them to remain in the United States without their mother would likewise cause them extreme hardship. Deportation would also cause Petitioner significant hardship; she has lived in the United States for almost twenty years, and would be forced to leave her husband and children. For these reasons, we conclude that the IJ likely would have granted suspension of deportation had Petitioner had an opportunity to appear before him to present her case.[5]

Deporting Petitioner without giving her an opportunity to present her arguments for suspension of deportation would produce an unconscionable result similar to that threatened in *Singh.* Because the considerations present in *Singh*—and additional compelling circumstances—exist in this case, the IJ should have granted Petitioner's motion to reopen. We therefore GRANT the petition and REMAND for

---

**3.** Under IIRIRA, the IJ considers hardship only to the alien's United States citizen relatives, and the alien must prove that his citizen relatives would suffer hardship "substantially beyond that which would ordinarily be expected to result from the alien's deportation." *Monreal,* 23 I. & N. Dec. at 56. Thus, a case that does not meet today's "extreme or exceptionally unusual hardship" standard may nevertheless satisfy the "extreme hardship" test for pre-IIRIRA suspension of deportation relief. *See id.* (finding applicant who had lived in the United States for twenty years, worked steadily, and had two school-aged children and parents living in the United States would likely meet "extreme hardship" requirement, but did not meet "extreme or exceptionally unusual hardship" standard).

**4.** At the time the IJ considered Petitioner's motion to reopen, her children were 10 and 12 years old.

**5.** We acknowledge that relief is less certain here, where Petitioner seeks a discretionary suspension of deportation due to hardship, than in *Singh,* where the petitioner was the beneficiary of an approved visa petition. This distinction does not meaningfully distinguish the two cases. Petitioner satisfies the statutory requirements for suspension of deportation and presents a compelling case of hardship. She is likely to receive the relief she requests if given an opportunity to present her case.

consideration of Petitioner's application for suspension of deportation.[6]

**6.** Petitioner's argument that the BIA should not have affirmed without opinion (or "streamlined") is foreclosed by cases published after Petitioner filed her appeal. *See Fal-* *con Carriche,* 350 F.3d at 853–54 & n. 8 (holding that Ninth Circuit lacks jurisdiction to review streamlining decision).