**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PREDRAG VUKMIROVIC,

*Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,

*Respondent.*

No. 05-75936

Agency No.
A072-443-690

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 14, 2010—San Francisco, California

Filed September 8, 2010

Before: Mary M. Schroeder and Johnnie B. Rawlinson,
Circuit Judges, and James Maxwell Moody, District Judge.*

Opinion by Judge Schroeder;
Dissent by Judge Rawlinson

*The Honorable James Maxwell Moody, Senior United States District
Judge for the Eastern District of Arkansas, sitting by designation.

13651

## COUNSEL

David Gardner, Los Angeles, California, for petitioner Predrag Vukmirovic.

Liza Murcia, Department of Justice, Washington, D.C., for respondent Eric H. Holder Jr., Attorney General.

## OPINION

SCHROEDER, Circuit Judge:

When this petitioner's case was before us over six years ago we remanded, holding that the Board of Immigration

Appeals ("BIA") and Immigration Judge ("IJ") had erred as a matter of law in ruling that the petitioner was not eligible for asylum consideration. *See Vukmirovic v. Ashcroft*, 362 F.3d 1247, 1253 (9th Cir. 2004) ("*Vukmirovic I*"). Unfortunately after remand Petitioner's newly retained counsel was not immediately able to contact the Petitioner to file a notice of appearance; the immigration court gave notice of the new hearing to his old counsel who did nothing, and Vukmirovic was ordered deported in absentia. The BIA denied reopening even after Vukmirovic's new counsel was able to appear and explain the situation. We now hold that this case presents "exceptional circumstances" within the meaning of the controlling statute, 8 U.S.C. § 1252b(f)(2) (1994), and remand for the asylum hearing we held Petitioner was entitled to in 2004.

## BACKGROUND

This case goes back to 1991 when Pedrag Vukmirovic, a Bosnian Serb, fled the violence in the former Yugoslavia to come to the United States. He applied for asylum soon after he arrived, and then in 1996 married a United States citizen. At two subsequent deportation hearings Vukmirovic sought continuances to allow the Immigration and Naturalization Service ("INS") to process his application for adjustment of status from his marriage, but the IJ denied those requests and proceeded to order him deported. The record does not indicate whether he is still married.

Vukmirovic has never had a ruling on the merits of his asylum application. At his 1996 asylum hearing the IJ effectively took over the proceedings, often interrupting him to ask questions. *See Vukmirovic I*, 362 F.3d at 1249 ("The IJ commenced the hearing by conducting the examination of Vukmirovic himself; it was only after the IJ concluded his questioning that he allowed Vukmirovic's counsel to begin presenting his case. Even after Vukmirovic began presenting his case, the IJ frequently interrupted to ask a series of questions."). In the testimony key to our 2004 ruling, Vukmirovic

testified that in 1990, he had joined an anti-communist group, affiliated with the Serbian Orthodox religion, whose job it was to defend his town against the attacks of Bosnian Croats. Bosnian Croats attacked Vukmirovic's town on several occasions, and Vukmirovic attempted to repel these attacks using only knives and sticks.

On the basis of this testimony, the IJ determined that Vukmirovic was a persecutor and statutorily barred from asylum, *see* 8 U.S.C. § 1101(a)(42), never reaching the merits of his asylum claim. The BIA issued a summary affirmance.

Attorney Steve Paek had represented Vukmirovic before the BIA, but whenVukmirovic sought review of the IJ's decision in this court he retained attorney David Gardner to represent him. In a published opinion, we held that the persecutor bar did not apply because Vukmirovic was acting in self defense. *See Vukmirovic I*, 362 F.3d at 1252-53. We granted the petition for review and remanded the case to the BIA for further proceedings. *See id.* at 1253.

On remand, however, due to an unfortunate and unusual confluence of events, the subsequent proceedings ordered by this court never occurred. The mandate in *Vukmirovic I* issued on June 24, 2004, and the BIA remanded the case to the immigration court on September 23, 2004. Although Gardner was Vukmirovic's counsel, because Paek had represented Vukmirovic before the BIA, the BIA provided notice of the remand only to Paek. *See* 8 C.F.R. §§ 292.5, 1003.1(f).[1] The BIA did not provide personal notice to Vukmirovic.

After retaining Gardner, Vukmirovic left his listed perma-

---

[1] Section 1003.1 provides that service of BIA decisions "shall be served upon the alien or party affected as provided in part 292 of this chapter." Section 292.5 provides such service "shall be given by or to, served by or upon, made by, or requested of the attorney or representative of record, or the person himself if unrepresented."

nent residence. According to his declaration, he did not relocate to a new address, but traveled and stayed for short periods of time with friends and different roommates, and as a result Gardner was unable to contact him. This prevented Gardner from filing a notice of appearance before the immigration court, because the notice of appearance form explicitly requires the alien's consent to the entry of a representative appearance before the immigration court. *See* Executive Office for Immigration Review, Form 28 (2001) ("EOIR-28") ("When an appearance is made by a person acting in a representative capacity, his/her personal appearance or signature shall constitute a representation that . . . he/she is authorized . . . to represent individuals.").

When the immigration court sent notice of the asylum hearing to Paek, setting a date of hearing of December 9, 2004, it did not send notice to Vukmirovic's home address. Paek did not inform the immigration court that he was no longer representing Vukmirovic, and does not appear to have made any effort to contact his former client to alert him to the new proceedings. As Gardner had not yet filed a notice of appearance, Gardner did not know of the December 9 hearing.

When neither Vukmirovic nor anyone representing him appeared for the December 9 hearing, the IJ set a new hearing date of January 6, 2005, and mailed notice, again to Paek, and also to Vukmirovic's home address. Vukmirovic, still away, did not receive the notice and was under the mistaken impression that Gardner would receive any correspondence related to his case. Paek received notice of the January hearing but again neither withdrew nor made any effort to contact Vukmirovic. Gardner, still unable to file a notice of appearance, again did not receive any notice. When no one appeared at the January 2005 hearing, the IJ ordered Vukmirovic removed in absentia. Contrary to the dissent's assertions, Vukmirovic did not disappear. He was arrested at work within a few weeks and placed into detention.

Vukmirovic immediately contacted Gardner after the arrest. When Gardner learned what had transpired, he quickly filed a motion to reopen on February 4, 2005, and promptly filed a notice of appearance, showing Vukmirovic's consent, on February 10, 2005.

The IJ denied the motion to reopen and ruled that the notice to Vukmirovic's home address satisfied due process. The IJ also held that, even though Paek had not represented Vukmirovic in his successful petition in this court, there was no error in notifying Paek as Vukmirovic's counsel because Gardner had not filed a notice of appearance. On appeal, the BIA affirmed the IJ's due process ruling and additionally found that Vukmirovic had not demonstrated that the absence from his hearing was due to "exceptional circumstances" within the meaning of the applicable statute. 8 U.S.C. § 1252b(f)(2) (1994); *Singh v. INS*, 295 F.3d 1037 (9th Cir. 2002). The BIA cited our decision in *Valencia-Fragoso v. INS*, 321 F.3d 1204 (9th Cir. 2003) (per curiam), and ruled that, as a matter of law, exceptional circumstances could not exist because Vukmirovic was seeking discretionary relief in the form of asylum.

## DISCUSSION

Vukmirovic argues that the immigration court provided constitutionally inadequate notice of the hearings, and that the exceptional circumstances of his case warrant granting the motion to reopen. We agree with Vukmirovic that this case presents exceptional circumstances under the relevant statute and therefore do not reach the due process question. *See Lee v. Walters*, 433 F.3d 672, 677 (9th Cir. 2005) (stating that courts should avoid reaching constitutional issues unless it is necessary to do so).

[1] Vukmirovic is entitled to recision of his in absentia deportation order if he demonstrates "that the failure to appear was because of exceptional circumstances." 8 U.S.C.

§ 1252b(c)(3)(A) (1994). The controlling statute defined "exceptional circumstances" as "circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1252b(f)(2); *recodified at* 8 U.S.C. § 1229a(e)(1) (defining exceptional circumstances as "exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien").[2] We have said that the determination of whether "exceptional circumstances" exist is based on the "particularized facts presented in each case," *see Singh v. INS*, 295 F.3d 1037, 1040 (9th Cir. 2002) (citation omitted), and have never pointed to a single circumstance as either qualifying or disqualifying a situation from consideration as exceptional.

*Singh* is our leading case interpreting the term "exceptional circumstances." The petitioner in *Singh* had obtained several continuances of his deportation hearing to obtain adjustment of status due to his marriage to a United States citizen. *Id.* at 1038-39. After becoming facially eligible for adjustment, he drove with his family to a deportation hearing only to learn he was late. *Id.* We rejected the government's argument that petitioner's tardiness did not present an exceptional circumstance, instead finding that the "particularized facts presented" were indeed exceptional. *Id.* at 1040 (citation omitted). The petitioner was the beneficiary of an approved visa petition, would not have been deported had he been on time, and thus "had no possible reason to try to delay the hearing." *Id.* at 1039-40. Because deportation would have led "to the unconscionable result of deporting an individual eligible for

---

[2]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 304(a), 110 Stat. 3009, deleted Section 1252b and recodified the definition of exceptional circumstances in essentially the same form in Section 1229a(e)(1).

relief from deportation," we found the BIA abused its discretion in denying the motion to reopen. *Id.* at 1040.

We built upon *Singh* in *Chete Juarez v. Ashcroft*, 376 F.3d 944, 947 (9th Cir. 2004), and found exceptional circumstances in another "compelling factual situation." There, the petitioner entered the United States in 1985, but the INS did not commence deportation proceedings until 1995. *Id.* at 946. The petitioner sought suspension of deportation, arguing that deportation would cause extreme hardship on her and her children. *Id.* The IJ denied relief finding that petitioner did not meet the requirements for suspension. *Id.* at 946-47. Over five years later, the BIA reversed and remanded the case to the IJ to reconsider petitioner's claim. *Id.* at 947. The petitioner, however, had moved while the proceedings were pending before the BIA, and she claimed the immigration court did not receive her change of address form. *Id.* She therefore missed her hearing because the immigration court sent notice to her old address. *Id.*

We found that case presented exceptional circumstances because "[t]he hearing Petitioner missed represented the culmination of years of efforts to regularize her status, and she had no reason to try to delay the hearing" since "[s]he had prevailed on appeal before the BIA and could finally proceed with her request for relief." *Id.* at 948. Additionally, we determined that, had petitioner appeared at her hearing, she "likely" would have obtained the desired grant of suspension of deportation. *Id.*

We have been careful to distinguish those cases presenting exceptional circumstances from cases where the facts surrounding a petitioner's failure to appear were unexceptional and ordinary. We discussed one such ordinary case in *Valencia-Fragoso v. INS*, 321 F.3d 1204 (9th Cir. 2003) (per curiam), upon which the BIA relied. There, the petitioner received notice of her deportation hearing, but arrived late, having lost the notice and forgotten the scheduled time. *Id.* at

1205. We found that the case did not present exceptional circumstances because there was nothing compelling about forgetting what time to show up for a hearing. *Id.* at 1205-06. We also distinguished *Singh* because the petitioner in *Valencia-Fragoso* did not have an approved visa petition and could at most have hoped for a discretionary grant of voluntary departure. *Id.*

**[2]** *Valencia-Fragoso* correctly recognized that the probability of relief is a relevant variable in determining whether exceptional circumstances exist. The BIA in this case, however, interpreted the case as holding that a petitioner could effectively *never* demonstrate that exceptional circumstances are present so long as the petitioner is seeking a discretionary form of relief. In so doing, the BIA erred as a matter of law and therefore abused its discretion. Our cases have consistently held that "we consider all exceptional-i.e., compelling-circumstances relevant to a petitioner's motion to reopen." *See Chete Jurarez*, 376 F.3d at 948; *see also Singh*, 295 F.3d at 1040 (requiring courts to look to the "particularized facts presented in each case") (citation omitted). That the relief sought is discretionary has never been an absolute bar. Indeed this court has found there were exceptional circumstances where the relief sought was discretionary. *See Chete Juarez*, 376 F.3d at 949 n.5 (granting motion to reopen to pursue suspension of deportation); *Lo v. Ashcroft*, 341 F.3d 934, 935-39 (9th Cir. 2003) (granting motion to reopen to pursue cancellation of removal). Thus, contrary to the BIA's holding here, deciding whether exceptional circumstances are present requires a consideration of all facts in a specific case, including but not limited to the probability of the petitioner obtaining relief.

**[3]** The First Circuit has adopted a similar, holistic, approach that rejects any simplistic definition of exceptional circumstances that would exclude from the realm of extraordinary any case where the relief sought is asylum. *See Kaweesa v. Gonzales*, 450 F.3d 62, 68-70 (1st Cir. 2006) (determining

BIA abused discretion in denying motion to reopen where relief sought was asylum). In *Kaweesa*, the court held that the "totality of the circumstances *must* be considered," and noted that a proper inquiry into whether there are exceptional circumstances looks to the specific facts of each case. *Id.* at 68-69 (looking to supporting documentary evidence, the alien's efforts in contacting the immigration court, the strength of an alien's underlying claim, the harm an alien would suffer if removed, promptness of the motion to reopen, and inconvenience to the government) (citation omitted); *see also In re B-A-S-*, 22 I. & N. Dec. 57, 58 (BIA 1998) (noting that "the totality of circumstances pertaining to the alien's case must be considered" in determining whether exceptional circumstances are present) (internal quotation marks and citation omitted). We agree with the First Circuit that the nature of relief is not dispositive, and that we should look to the "totality of the circumstances" to determine whether exceptional circumstances are present in a given case.

**[4]** Applying the proper standard, we conclude that the peculiar qualities of this case demonstrate exceptional circumstances. Vukmirovic applied for asylum almost two decades ago, achieved a victory before this court in *Vukmirovic I*, and still has not had his asylum claim decided under the proper legal standard. He had no motivation to delay the hearing, as having a fair adjudication of his asylum claim "represented the culmination of years of efforts to" seek lawful status in this country. *See Chete Juarez*, 376 F.3d at 948. Like the petitioner in *Chete Juarez*, Vukmirovic "had prevailed on appeal before [this court in 2004] and could finally proceed with [his] request for relief." *See id.*

**[5]** Neither Vukmirovic nor his attorney Gardner received notice of the hearing because of an ironic series of events. Vukmirovic was away from his permanent address and quite reasonably expected that Gardner was handling all matters related to his asylum application. Gardner, for his part, could not file a notice of appearance before the immigration court

because he did not yet have Vukmirovic's consent to do so. Filing a notice of appearance in the absence of such consent was contrary to Department of Homeland Security regulations as incorporated by the notice of appearance form, and possibly would have been an ethical violation. *See* Cal. Bus. & Prof. Code § 6104 ("Corruptly or wilfully and without authority appearing as attorney for a party to an action or proceeding constitutes a cause for disbarment or suspension."); EOIR-28 ("When an appearance is made by a person acting in a representative capacity, his/her personal appearance or signature shall constitute a representation that . . . he/she is authorized and qualified to represent individuals."). Vukmirovic's counsel cannot be faulted, as a lawyer, for adhering to regulations and professional standards. Vukmirovic cannot be faulted as a client for not knowing what those regulations and professional standards were.

The history of the statutory provisions shows that Congress' decision to excuse an alien's absence only for "exceptional circumstances" was "in response to a serious problem of aliens deliberately failing to appear for hearings and thus effectively extending their stay in this country." *Kaweesa*, 450 F.3d at 68. That problem was not at all present here, given Vukmirovic's diligent pursuit of his remedies throughout the lengthy procedural history of this case. This history distinguishes Vukmirovic from those petitioners who claimed "exceptional circumstances" in ordinary situations, such as forgetting the time of the hearing, getting stuck in traffic, or simply not receiving the notice letter. *See Valencia-Fragoso*, 321 F.3d at 1205; *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997) (finding no exceptional circumstances where petitioner claimed he did not receive letter noticing hearing and presented no other facts suggesting a compelling situation); *Sharma v. INS*, 89 F.3d 545, 546-48 (9th Cir. 1996) (no exceptional circumstances where petitioner one hour late due to traffic). There is nothing exceptional or compelling about mere tardiness.

While the probability of relief is a relevant variable to consider, *see Valenica-Fragoso*, 321 F.3d at 1205-06, it has little significance here. Because Vukmirovic has never been given a meaningful opportunity to present his asylum case, there is no record on which to assess the strength or weakness of his underlying claim. Moreover, as almost 20 years have passed since he filed his asylum application, we cannot even speculate on the merits of his claim with any accuracy. Neither the IJ nor the BIA has looked at the merits.

**[6]** The BIA may have discounted the significance of his diligent pursuit of relief that followed the original denial of his asylum application in 2002. The BIA looked back and suggested that he may not have been diligent in his pursuit of an asylum hearing because he missed a 1997 adjustment of status interview. Why he missed that interview is not in the record, and in any event it occurred well before our decision in *Vukmirovic I*. Since then the record demonstrates prompt action. Following his arrest — when he learned for the first time he had been ordered deported in absentia — Vukmirovic acted immediately to contact his lawyer, who in turn acted as promptly as he could under the circumstances to file a duly authorized motion to reopen and then pursue this appeal. There has thus been no lack of diligence to detract from the claim of exceptional circumstances. *See In re B-A-S-*, 22 I. & N. Dec. at 59 ("Although diligence [in filing a motion to reopen] is not a statutory requirement, we find that [a] lack of diligence is a factor that undercuts [a] respondent's claim" that exceptional circumstances were present.).

**[7]** In sum we agree with Vukmirovic that "[t]his is a highly unusual case" that compels a finding of exceptional circumstances. *See Singh*, 295 F.3d at 1038. Unlike the garden variety of cases where an alien asks this court to excuse his negligent or deliberate absence from a deportation or removal hearing, Vukmirovic did not "merely seek[ ] to delay the inevitable." *See id.* at 1039. He rather had every incentive to attend his hearing. The BIA failed to consider the unique

qualities of this case and incorrectly held that aliens seeking discretionary relief can never demonstrate "exceptional circumstances." For these reasons it abused its discretion in denying the motion to reopen. We remand this case to — at long last— allow Vukmirovic an opportunity to present his asylum case.

Petition for review **GRANTED**.

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. I am in complete and total disagreement with the majority's conclusion that the facts of this case present an extraordinary circumstance. Stripped to its essence, the Petitioner's story is one of an unexplained disappearance resulting in his failure to appear at his removal proceeding. Coupled with the Petitioner's disappearance was his new counsel's failure to file a notice of appearance with the immigration court, thereby eliminating the possibility of his receiving notice of the impending proceeding.

The majority characterizes these facts as "ironic." *See* Majority Opinion, p. 13662. In my view, a more accurate description of the Petitioner's failure to maintain contact with his attorney and the immigration court is "derelict." Whether an irony or a dereliction, there is nothing extraordinary about these facts.

I am not persuaded that either *Ranjit Singh v. INS*, 295 F.3d 1037, 1040 (9th Cir. 2002) or *Chete Juarez v. Ashcroft*, 376 F.3d 944, 947 (9th Cir. 2004) supports a remand under the facts of this case. In *Ranjit Singh*, although tardy, the Petitioner actually appeared at the proceeding. *See Ranjit Singh*, 295 F.3d at 1038-39. More importantly, as the majority acknowledges, *see* Majority Opinion, p. 13659-60, the Petitioner in *Ranjit Singh* had an approved visa petition and

would not have been deported had he appeared at the deportation proceeding. *See Ranjit Singh*, 295 F.3d at 1039. In contrast, Predrag Vukmirovic, the Petitioner in this case, did not attend the proceeding at all. Nor was he the beneficiary of an approved visa petition. The most Vukmirovic could hope for was a discretionary grant of asylum. *See Vukmirovic v. Ashcroft*, 362 F.3d 1247, 1249 (9th Cir. 2004). The very case relied on by the majority and authored by the same writer made a point of noting that no exceptional circumstances would exist where the "only possibility of relief from deportation . . . was a discretionary grant of asylum." *Ranjit Singh*, 259 F.3d at 1039-40. Vukmirovic's circumstances bear little resemblance to those deemed extraordinary in *Ranjit Singh*.

Similarly, in *Chete Juarez*, we determined that exceptional circumstances existed. A major factor in the determination was the likelihood that the Immigration Judge would have granted *Chete Juarez* the relief she sought, suspension of deportation. No parallel likelihood exists for Vukmirovic.

The majority accuses the Board of Immigration Appeals (BIA) of interpreting *Valencia-Fragoso v. INS*, 321 F.3d 1204 (9th Cir. 2003) (per curiam) "as holding that a petitioner could effectively *never* demonstrate that exceptional circumstances are present as long as the petitioner is seeking a discretionary form of relief." Majority Opinion, p. 13661 (emphasis in the original). Not so. The BIA did nothing other than the panel in *Ranjit Singh* did—consider the discretionary relief sought as a factor that weighed against a finding that extraordinary circumstances existed. *See Ranjit Singh*, 295 F.3d at 1039-40.

In sum, the majority stretches our precedent to grant relief in this case that bears no resemblance to the facts of *Ranjit Singh* or *Chete Juarez*. In keeping with our precedent, I would deny Vukmirovic's petitition. Accordingly, I respectfully dissent.