**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLAUDIA ELENA MONTEJO-GONZALEZ; DANY JUAN FRANCISCO MONTEJO; MARIA NATALIA FRANCISCO MONTEJO, | No. 21-304 |
| | Agency Nos. A201-670-355 A201-670-354 A201-670-353 |
| *Petitioners*, | |
| v. | OPINION |
| MERRICK B. GARLAND, Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 5, 2023
Pasadena, California

Filed October 17, 2024

Before: Daniel P. Collins, Salvador Mendoza, Jr., and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Desai;
Dissent by Judge Collins

## SUMMARY[*]

### Immigration

Granting Claudia Elena Montejo-Gonzalez's petition for review a decision of the Board of Immigration Appeals, and remanding, the panel held that the facts of this case amounted to exceptional circumstances warranting reopening of her in absentia removal order and those of her minor children.

As relevant here, an in absentia removal order may be rescinded upon a motion to reopen if the noncitizen demonstrates that the failure to appear at the removal hearing was because of "exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). That term refers to circumstances beyond the noncitizen's control, such as "serious illness or death" of the noncitizen's spouse, child, or parent, but does not include "less compelling circumstances." 8 U.S.C. § 1229a(e)(1). The panel explained that, in making the exceptional circumstances determination, the IJ and BIA must look to the totality of the circumstances and must consider certain relevant factors.

The panel concluded that the IJ and BIA abused their discretion by failing to consider the totality of the circumstances. First, the panel concluded that the IJ and BIA ignored that petitioners did everything they reasonably could to have their day in court and that their delayed arrival at court was beyond their control. Petitioners left home early enough to make it to their hearing on time but encountered

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

two major car accidents and, once they arrived at court, spoke to two clerks and tried to have their case heard.

Second, the panel determined that the IJ and BIA overlooked petitioners' lack of motive for missing the hearing. The panel concluded that petitioners did not attempt to evade their hearing, and the IJ and BIA abused their discretion by ignoring this factor.

Third, the panel concluded that the IJ and BIA disregarded that the in absentia orders would cause unconscionable results. The panel explained that the IJ and BIA failed to address this factor, particularly with respect to the minor children, who are eligible to seek derivative citizenship through their father. The panel also explained that petitioners were not required to make a prima facie showing of eligibility for relief.

Dissenting, Judge Collins wrote that this court has repeatedly held that the demanding statutory standard for establishing exceptional circumstances is not satisfied when—as in this case—the aliens failed to appear because they left little margin for error in planning their drive to the courthouse and encountered traffic congestion on the way.

Judge Collins concluded that the majority's opinion contravenes controlling precedent and rewrites the strict statutory standard, replacing it with a flexible, multifactor balancing test under which the majority grants the petition and orders petitioners' removal proceedings be reopened. Further, Judge Collins wrote that the panel had no right to replace the more easily administrable, strict standard that Congress adopted with a watered-down standard that threatens to have substantial and disruptive impacts on the overburdened immigration system.

## COUNSEL

Tina N. Malek (argued), Malek Law Group APC, San Diego, California, for Petitioner.

Anthony Nardi (argued) and Rosanne M. Perry, Trial Attorneys; Jessica E. Burns, Senior Litigation Counsel; Brian M. Boynton, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

DESAI, Circuit Judge:

On their way to an initial hearing before an immigration judge ("IJ") in Seattle, Washington, Claudia Elena Montejo-Gonzalez and her two minor children ("petitioners") encountered two major car accidents and were late for the hearing. The IJ ordered them removed in absentia. Petitioners promptly moved to reopen, explaining that exceptional circumstances justified their late arrival to court. The IJ and Board of Immigration Appeals ("BIA") denied the motion on the grounds that ordinary traffic, alone, is not an exceptional circumstance. But the IJ and BIA failed to consider multiple factors under the totality of the circumstances. Petitioners left their home with sufficient time to get to court under ordinary circumstances; they were unrepresented by counsel and thus unable to call an attorney for help to seek a continuance; they took photographs showing the extraordinary traffic they encountered; they persisted in eventually getting to court, albeit late; and they

repeatedly asked the court to hear their case when they arrived. They also established that the children are eligible to seek derivative citizenship through their father, and the in absentia removal order deprives them of the opportunity to seek such relief, which would lead to unconscionable results. We hold that the facts of this case amount to exceptional circumstances, which warrant reopening. We thus grant the petition for review and remand for further proceedings consistent with this opinion.

## BACKGROUND

Ms. Montejo-Gonzalez and her children entered the United States on December 10, 2018. They applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") based on Ms. Montejo-Gonzalez's encounter with a gang member who threatened to kill her and her children if she refused to be his girlfriend.

Petitioners were scheduled for an initial hearing before an IJ in Seattle, Washington. They were not represented by counsel at the time. Under usual circumstances, petitioners would have timely arrived for their hearing before the immigration court. But on their way to the hearing, petitioners encountered not one, but two major accidents that caused severe traffic. Petitioners were about two hours late for the hearing, and the IJ ordered them removed in absentia. Upon arrival, Ms. Montejo-Gonzalez spoke with two clerks to try to have her case heard, but to no avail. Subsequently, petitioners timely moved to reopen their removal proceedings, arguing that they were late because of "exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i).

Petitioners asked the IJ to reopen their case to give them "an opportunity to present" their applications for asylum,

withholding of removal, and CAT protection. They attached their applications and supporting evidence to their motion to reopen, including several photos they took on their way to the hearing documenting the major accidents and extraordinary traffic. Petitioners also included a letter from the children's father explaining that he was a permanent United States resident and had an upcoming naturalization interview, which could help the children obtain derivative citizenship.

The IJ denied the motion. He held that Ms. Montejo-Gonzalez did not "articulate a compelling circumstance" that justified her late arrival to the hearing. The IJ also noted that Ms. Montejo-Gonzalez failed to make a prima facie showing that she qualified for asylum. The IJ never addressed the minor children's claims or their ability to seek derivative citizenship through their father.

Petitioners appealed to the BIA. They argued that the IJ erred by not addressing the children's motions to reopen and that exceptional circumstances warranted reopening. They also presented evidence that the children's father was now a naturalized citizen. The BIA adopted and affirmed the IJ's decision. The BIA held that petitioners failed to establish exceptional circumstances excusing their late appearance, and that the children failed to establish eligibility for adjustment of status through their newly naturalized father. Ms. Montejo-Gonzalez petitioned this court for review.

## STANDARD OF REVIEW

This court reviews the denial of a motion to reopen for abuse of discretion. *Hernandez-Galand v. Garland*, 996 F.3d 1030, 1034 (9th Cir. 2021). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to the law, and when it fails to provide a reasoned explanation for its

actions." *Id.* (quoting *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014)).

Where the BIA adopts and affirms the IJ's decision, as it did here, the BIA's "conclusions upon review of the record coincide with those which the immigration judge articulated in his or her decision." *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011) (quoting *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994)). Thus, we review both decisions.

## DISCUSSION

Petitioners contend that exceptional circumstances warrant reopening their proceedings. We agree.

Under the Immigration and Nationality Act ("INA"), a properly entered in absentia removal order "may be rescinded . . . upon a motion to reopen filed within 180 days after the date of the order of removal if the [noncitizen] demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). "The term 'exceptional circumstances' refers to exceptional circumstances . . . beyond the control of the [noncitizen]," "such as battery or extreme cruelty to the [noncitizen] or any child or parent of the [noncitizen], serious illness of the [noncitizen], or serious illness or death of the spouse, child, or parent of the [noncitizen], but not including less compelling circumstances." *Id*. § 1229a(e)(1). "[T]he INA's enumerated examples are not an exhaustive list." *Hernandez-Galand*, 996 F.3d at 1034 (citing *Arredondo v. Lynch*, 824 F.3d 801, 805 (9th Cir. 2016)).

To decide whether exceptional circumstances justify a noncitizen's failure to appear, the IJ and BIA must "look at the totality of the circumstances to determine whether the [noncitizen] could not reasonably have been expected to

appear." *Id.* (quoting Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75, 151 (1993) (citing H.R. Rep. No. 955, 101st Cong., 2d Sess. 132 (1990))). This inquiry is necessarily fact intensive and case specific. For example, in the unfortunate scenario in which a petitioner's child falls seriously ill, *see* 8 U.S.C. § 1229a(e)(1), such illness, standing alone, would not justify the noncitizen's failure to appear for a court date. Rather, the petitioner would need to make the additional showing that, under the totality of the circumstances, the petitioner's "failure to appear was *because* of" their child's illness. 8 U.S.C. § 1229a(b)(5)(C)(i) (emphasis added).

In determining whether the totality of the circumstances justifies a petitioner's failure to appear, the IJ and BIA must consider whether "petitioners did all they reasonably could to have their cases heard promptly," *Lo v. Ashcroft*, 341 F.3d 934, 938 (9th Cir. 2003), and whether "through no fault of their own, [petitioners] have never had their day in court to present their claims," *Romani v. I.N.S.*, 146 F.3d 737, 739 (9th Cir. 1998). They must also consider other relevant factors, including (1) "whether the petitioner had a motive for failing to appear (such as avoiding a removal order on the merits)" and (2) "whether the in absentia removal order would cause unconscionable results." *See Hernandez-Galand*, 996 F.3d at 1034–35 (citing *Chete Juarez v. Ashcroft*, 376 F.3d 944, 948 (9th Cir. 2004); *Singh v. I.N.S.*, 295 F.3d 1037, 1039–40 (9th Cir. 2002) [hereinafter *R. Singh*]). Failure to address a relevant factor is error. *Id.* at 1036.

This test is not new. Contrary to the dissent's assertions, our existing precedent requires that we analyze the "totality of the circumstances" when "determining whether the

petitioner has established exceptional circumstances" under 8 U.S.C. § 1229a(b)(5)(C)(i).[1] *Hernandez-Galand*, 996 F.3d at 1034 (quoting *Celis-Castellano v. Ashcroft*, 298 F.3d 888, 892 (9th Cir. 2002)); *see also Singh v. Garland*, __ F.4th __, 2024 WL 4207027 (9th Cir. 2024) [hereinafter *V. Singh*]. And we have held that the BIA "err[s]" by "not addressing" a relevant factor. *Hernandez-Galand*, 996 F.3d at 1036; *see also V. Singh*, 2024 WL 4207027, at *4–5 (holding that BIA erred by not considering the merits of petitioner's pending applications for relief, unconscionable result of deportation, and that petitioner's hearing date was moved up two years).

The dissent also incorrectly suggests that this test puts "dispositive weight" on any one factor. Dissent at 42. The test requires considering all relevant factors in the aggregate. *See Hernandez-Galand*, 996 F.3d at 1037 (explaining that each factor is "but one factor in the totality of the circumstances which inform the assessment of exceptional circumstances" and a "strong showing on some factors may lessen the requisite showing on others"). The dissent maintains that our prior cases establishing this test (*Hernandez-Galand*, *Chete Juarez*, *V. Singh*, and *R. Singh*) do not apply here because they involved "unusual" facts, and only in those narrow factual circumstances may we consider the various factors under the totality of the circumstances. Those cases say no such thing and cannot so easily be swatted away. In adopting the legal test as we did in our prior

---

[1] The government also correctly articulates our exceptional circumstances test in its answering brief. Only our dissenting colleague takes issue with our court's test. Although we are "not hidebound by the precise arguments of counsel," the dissent's "radical transformation of [the appropriate analysis for] this case goes well beyond the pale" and violates the well-established party presentation rule. *See United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020).

cases, we in no way suggested that the test cannot apply beyond the particular facts in those cases. Indeed, in *Arredondo*, a case involving a noncitizen who missed her hearing because of mechanical trouble, we considered the "totality of the circumstances" to determine whether exceptional circumstances existed, including the petitioner's lack of diligence in getting to court and her failure to show that denying her motion to reopen would cause unconscionable results. 824 F.3d at 806–07.

At least two of our sister circuits also apply our totality-of-the-circumstances approach. The First Circuit has held that courts "must take into account the totality of the circumstances" when deciding "whether exceptional circumstances exist." *Murillo-Robles v. Lynch*, 839 F.3d 88, 91 (1st Cir. 2016). This analysis includes many factors, including the noncitizen's "efforts in contacting the immigration court," the noncitizen's "promptness in filing the motion to reopen," "the strength of the [noncitizen's] underlying claim, the harm the [noncitizen] would suffer if the motion to reopen is denied, and the inconvenience the government would suffer if the motion is granted." *Kaweesa v. Gonzales*, 450 F.3d 62, 68–69 (1st Cir. 2006). "This emphasis on the totality of the circumstances is 'grounded in due process considerations' and the need to 'ensure that [a noncitizen] is not deprived of a meaningful opportunity to be heard.'" *Murillo-Robles*, 839 F.3d at 92 (quoting *Kaweesa*, 450 F.3d at 69–70). The Sixth Circuit likewise considers "the totality of the circumstances" when deciding whether a petitioner "establish[ed] exceptional circumstances justifying her failure to appear at her immigration hearing." *E. A. C. A. v. Rosen*, 985 F.3d 499, 504 (6th Cir. 2021).

**I. The IJ and BIA ignored that petitioners did everything they reasonably could to have their day in court and that their delayed arrival was beyond their control.**

In assessing whether petitioners established exceptional circumstances, the IJ and BIA must first look to whether "petitioners did all they reasonably could to have their cases heard promptly," *Lo*, 341 F.3d at 938, and whether, "through no fault of their own, [petitioners] have never had their day in court to present their claims," *Romani*, 146 F.3d at 739. They failed to do so here.

The IJ and BIA, relying on *Arredondo*, 824 F.3d 801, focused on whether traffic delay *alone* establishes an exceptional circumstance. But *Arredondo* does not support denying relief here. In that case, we noted that common delays like ordinary traffic, "standing alone," do not compel reopening. *See id.* at 806. Our analysis did not stop there. Rather, we examined the "totality of the circumstances" to decide whether exceptional circumstances warranted reopening and concluded they did not. *Id.* In *Arredondo*, when the petitioner's car broke down en route to her removal hearing, she went to a repair shop instead of court despite having the funds for other means of transportation. *Id.* She also "purposely took an unnecessarily long route to court," ignored her "lawyer's phone calls in the days before the hearing," and failed to contact "her lawyer or the court" after missing the hearing. *Id.* & n.3. Thus, the court held that mere "mechanical failure, *coupled with*" the petitioner's other conduct, did "not constitute exceptional circumstances." *Id.* at 806 (emphasis added). In short, even though the petitioner in *Arredondo* experienced car problems, her other dilatory conduct, including her detour to a repair shop and decision

to "purposely [take] an unnecessarily long route to court," undermined her request to reopen. *Id*. & n.3.

Here, unlike the petitioner in *Arredondo*, petitioners did everything they reasonably could to make it to court. Petitioners left home early enough to make it to their hearing on time but encountered two major accidents that caused extraordinary traffic. They took several pictures of the accidents, demonstrating that the delay was beyond their control. Although petitioners realized they would be late to the hearing, they persisted in getting to court. They arrived two hours late, at 10:30 AM, and court was still open, but the judge had adjourned. Upon arrival, they spoke to two clerks and tried to have their case heard. In short, they did all they reasonably could to have their day in court. The IJ and BIA ignored these facts.[2]

While traffic "does not alone compel granting a motion to reopen based on 'exceptional circumstances,'" *Arredondo*, 824 F.3d at 806, the IJ and BIA must nonetheless consider the totality of the circumstances, *Hernandez-*

---

[2] Contrary to our dissenting colleague's view, *Sharma v. I.N.S.*, 89 F.3d 545 (9th Cir. 1996), does not support denying relief here. There, the court held that petitioners' encounter with traffic and trouble finding parking did not warrant reopening. *Id.* at 548. The court's analysis, however, turned on what standard applied to petitioners' motion to reopen and not whether the BIA properly considered the totality of the circumstances. *Id.* at 547–48. The *Sharma* petitioners argued that the BIA erred by not construing the "exceptional circumstances" language in conjunction with the "reasonable cause" standard that previously governed in absentia removals. *Id.* at 547. The court rejected that the "exceptional circumstances" standard imports the "reasonable cause" standard and held that only the former applies. *Id.* at 548. The court did not reach, nor did petitioners challenge, whether other circumstances in addition to the traffic and parking troubles would have justified reopening. *Sharma* is thus inapposite.

*Galand*, 996 F.3d at 1036. The IJ and BIA thus should have considered the two major accidents, which were beyond petitioners' control, and petitioners' persistent efforts to have their day in court. Their failure to consider these facts was an abuse of discretion.

## II. The IJ and BIA overlooked petitioners' lack of motive for missing the removal hearing.

The IJ and BIA also must consider whether petitioners had an improper motive for failing to appear. *Hernandez-Galand*, 996 F.3d at 1034–35. They did not do so.

To assess motive, this court has looked to facts such as diligence in making prior court appearances or appointments with government agencies, how swiftly petitioners moved to reopen following in absentia removal orders, and whether petitioners aimed to avoid removal orders on the merits. *See, e.g.*, *id.* at 1036–37 (reasoning that petitioner, a nonreader who had memory problems that caused her to forget her hearing date, lacked motive to miss her hearing because she was diligent in making all prior appearances and moved to reopen a "mere sixteen days after the in absentia removal orders"); *Chete Juarez*, 376 F.3d at 948 (considering that "petitioner appeared for every scheduled hearing" prior to the one she missed when evaluating whether she attempted to evade the hearing); *R. Singh*, 295 F.3d at 1040 (finding petitioner "had no possible reason to try to delay the hearing" where he, among other things, "diligently appeared for all of his previous hearings"). These examples are not exhaustive, nor are they all necessary to prove that a petitioner lacked motive to evade their hearing, but all support petitioners here.

The IJ and BIA failed to conduct the motive analysis altogether. First, prior to the hearing, petitioners regularly

met with Department of Homeland Security ("DHS") agents, who came to petitioners' house once a month since they arrived in the United States. Like the petitioner in *Hernandez-Galand* who attended her appointments with ICE, 996 F.3d at 1036, petitioners diligently attended their appointments with DHS. Second, petitioners moved as quickly as possible to reopen their case after the removal order. Third, even when petitioners realized that the unexpected accidents on the roads may cause them to be late, they still went to court and tried to have their case heard that day. Fourth, Ms. Montejo-Gonzalez is pursuing not only her own rights in this case, but the rights of her children. Her motive to secure relief for her two minor children, whose father is a U.S. citizen, further demonstrates a lack of motive to evade her immigration proceedings. Thus, petitioners did not attempt to evade their hearing, and the IJ and BIA abused their discretion by ignoring this factor. *Id.*

### III. The IJ and BIA disregarded that the in absentia removal order would cause unconscionable results.

The IJ and BIA must consider "whether the in absentia removal order would cause unconscionable results" when determining whether a petitioner has shown exceptional circumstances. *Hernandez-Galand*, 996 F.3d at 1034–35; *see Chete Juarez*, 376 F.3d at 949. The IJ and BIA abused their discretion by failing to consider this factor, particularly with respect to the children-petitioners.

The IJ failed to address the children, who are eligible to seek derivative citizenship through their father. This was error. As we held in *Hernandez-Galand*, where petitioners include minor children, a parent's opportunity to present their case "is not the only consideration" because the children's opportunity for relief from removal is also at

stake. 996 F.3d at 1037. Here, petitioners include a mother and her two minor children. The children's father, now a U.S. citizen, was scheduled for his citizenship interview at the time of the in absentia removal hearing and became a citizen about three months later. Thus, both minor children are eligible to apply for derivative citizenship through their father. But the IJ failed to consider this, or the harm of separating the children from the father. [3] *See R. Singh*, 295 F.3d at 1040 (considering the break-up of families in evaluating exceptional circumstances); *Chete Juarez*, 376 F.3d at 949 (explaining that breaking up the family would "present an extreme hardship").

The IJ also erred by holding that Ms. Montejo-Gonzalez failed to make a prima facie showing that she qualified for asylum, and the BIA erred by holding that the children did not "sufficiently demonstrate their eligibility for adjustment of status." A likelihood of prevailing on the merits is not a necessary condition of establishing "exceptional circumstances." *Hernandez-Galand*, 996 F.3d at 1037. Indeed, in *Hernandez-Galand*, this court recognized that although the petitioner had not yet established a likelihood of success, she established exceptional circumstances because she made a "compelling showing on the other factors." *Id.* at 1037–38. So too here. Petitioners were not required to show a likelihood of success on the merits to prevail on their motion to reopen, and the IJ and BIA erred

---

[3] The dissent claims that there is no evidence in the record suggesting that the two parents and children intend to live together. Dissent at 57 n.9. While Ms. Montejo-Gonzalez is not married to her children's father, there is evidence that the father intended to support his children and their mother and that he implored the IJ to allow Ms. Montejo-Gonzalez and the children to remain in the country.

by failing to consider the factors establishing exceptional circumstances.

That petitioners are not required to make a prima facie showing of eligibility for relief is—contrary to the dissent's assertion—neither novel nor inconsistent with the statutory text. The requirements for reopening a removal order entered in absentia are enunciated in § 1229a(b)(5)(C)(i). A prima facie showing of eligibility for relief is not one of them. The BIA has repeatedly echoed so. *See, e.g.*, *In re Grijalva-Barrera*, 21 I. & N. Dec. 472, 473 n.2 (BIA 1996); *In re Rivera-Claros*, 21 I. & N. Dec. 599, 603 n.1 (BIA 1996). And the Sixth Circuit, as our dissenting colleague acknowledges, Dissent at 54 n.8, has held as we do here. *See E. A. C. A.*, 985 F.3d at 508–09 (holding that petitioner "is not required to make a *prima facie* showing of eligibility for relief in order to obtain rescission . . . of the *in absentia* order").[4] We decline to read such a requirement into § 1229a(b)(5)(C)(i), and the IJ erred in doing so.

*          *          *

In sum, the failure to consider the totality of the circumstances—namely, that petitioners' delayed arrival was beyond their control, that they did everything they reasonably could to have their day in court, that they lacked

---

[4] The dissent attempts to distinguish these cases by explaining that a prima facie showing is not required to rescind an in absentia removal order *only* when the motion to reopen is premised on an ineffective assistance of counsel claim. Dissent at 54 n.8. But our caselaw has never categorized ineffective-assistance claims separately from other types of exceptional circumstances under § 1229a(b)(5)(C)(i) nor is there any justification for the dissent's contrived theory that some claims are burdened with a prima facie showing requirement while others—ineffective assistance claims—are not.

motive to evade their hearing, and that they would suffer unconscionable results if denied the opportunity to present their case for relief from removal—constitutes an abuse of discretion.

## CONCLUSION

Given the totality of the circumstances, we conclude that Ms. Montejo-Gonzalez and her children demonstrated exceptional circumstances warranting relief under § 1229a(b)(5)(C)(i). The BIA abused its discretion by denying her request to reopen.

We therefore **GRANT** the petition for review and **REMAND** to the BIA for further proceedings consistent with this opinion.

---

COLLINS, Circuit Judge, dissenting:

To ensure that aliens who have received formal written notice of their removal hearings will timely appear for those hearings, Congress has authorized the entry of *in absentia* removal orders when such aliens fail to appear, and it has set extremely strict standards for challenging such orders. Under the applicable statutory standard, no such *in absentia* order may be set aside unless the alien shows that "the failure to appear was [1] *because of* [2] exceptional circumstances" that [a] were "beyond the control of the alien" *and* [b] are *not* "less compelling circumstances" than specified matters affecting the alien or certain family members, such as "serious illness," "death," "battery," or "extreme cruelty." 8 U.S.C. § 1229a(b)(5)(C)(i), (e)(1) (emphasis added). "[T]his is a difficult burden to meet." *Arredondo v. Lynch*, 824 F.3d 801, 806 (9th Cir. 2016) (citation omitted).

We have repeatedly held that this demanding statutory standard is not satisfied when—as in this case—the aliens failed to appear at their removal hearing because they "left little margin for error" in planning their drive to the courthouse and encountered traffic congestion on the way. *Arredondo*, 824 F.3d at 806; *see also Perez v. Mukasey*, 516 F.3d 770, 774 n.2 (9th Cir. 2008) (explaining that "[t]raffic and parking trouble" do not meet the statutory standard because they "are circumstances that an alien may fairly be expected to anticipate"); *Sharma v. INS*, 89 F.3d 545, 547 (9th Cir. 1996) (holding that the petitioners' "traffic difficulties do not qualify as exceptional circumstances beyond [their] control"). Indeed, traffic issues plainly do not meet the requirement that the failure to appear must have been caused by exceptional circumstances that are no "less compelling" than "the statutory examples" of illness, death, battery, or extreme cruelty involving the alien or a family member. *Arredondo*, 824 F.3d at 806 (quoting 8 U.S.C. § 1229a(e)(1)). Under these precedents, this is an easy case that should have resulted in a brief memorandum disposition denying the petition for review.

The majority's opinion in this case instead contravenes our controlling precedent and rewrites the strict statutory standard, replacing it with a flexible, multifactor balancing test under which the majority grants the petition for review and orders Petitioners' removal proceedings to be reopened. Reopening is warranted, the majority holds, because the particular accidents that Petitioners encountered were "beyond their control" (as accidents always are); because they "did everything they reasonably could" to arrive on time (other than leave early enough to account for possible traffic issues); and because it would be "unconscionable" not to hear their claims on the merits (even though Petitioners

failed to present a sufficient showing on the merits). *See* Opin. at 16–17. All of this is wrong, and the majority's watering down of the statutory standard threatens to have substantial and disruptive impacts on our overburdened immigration system. I respectfully dissent.

# I

## A

At around 11:00 PM on November 27, 2018, a Border Patrol agent observed Claudia Elena Montejo-Gonzalez and her two minor children (collectively, "Petitioners") unlawfully cross the border into the United States near Antelope Wells, New Mexico. The agent approached the three, who admitted that they were citizens of Guatemala and that they lacked any valid documents allowing them to enter or remain in the United States. After the three were taken into custody, Montejo-Gonzalez stated during a subsequent screening interview that she did not fear being returned to Guatemala and that she had come to the United States to live in Bremerton, Washington and to seek employment there.

On November 30, 2018, Montejo-Gonzalez was personally served with Notices to Appear ("NTAs") for her and her two children. The NTAs ordered them to appear at the immigration court in Seattle, Washington on "January 31, 2019 at 12:00 PM." The NTAs charged Petitioners with being removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") on the ground that they were aliens who were present in the United States "without being admitted or paroled," or who had arrived in the United States

at a "time or place other than as designated by the Attorney General."  8 U.S.C. § 1182(a)(6)(A)(i).[1]

Subsequent notices, served by mail on January 28, 2019 to Montejo-Gonzalez's Bremerton address, stated that the hearings for all three Petitioners would instead be held at the Seattle immigration court at "a date and time to be determined."  Thereafter, on May 28, 2019, a written Notice of Hearing ("NOH") was sent to that same Bremerton address, stating that all three Petitioners' cases were set for a "Master hearing before the Immigration Court on Oct 31, 2019 at 08:30 A.M." at the specified address of the Seattle immigration court.  Petitioners do not contest that they received this NOH.  In accordance with § 239(a)(2) of the INA, 8 U.S.C. § 1229(a)(2), the NOH specifically warned Petitioners that failure to appear, absent exceptional circumstances, could result in a hearing being conducted in their absence and that, at such a hearing, an "order of removal will be entered against you if the Department of Homeland Security established by clear, unequivocal and convincing evidence that a) you or your attorney has been provided this notice and b) you are removable."  *See Campos-Chaves v. Garland*, 602 U.S. 447, 144 S. Ct. 1637, 1643–44 (2024) (describing the statutory requirements for an NOH).

---

[1] "Because title 8 of the United States Code has not been enacted as positive law, [I] will generally refer to the underlying provisions of the INA, while also supplying the corresponding citation to title 8." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1149 n.1 (9th Cir. 2022). "The text of the INA, as amended, is available on the website of the U.S. Government Publishing Office. *See* https://www.govinfo.gov/content/pkg/COMPS-1376/pdf/COMPS-1376.pdf." *Id.*

Petitioners failed to appear at the scheduled October 31, 2019 hearing.  The immigration judge ("IJ") proceeded with the hearing *in absentia*, and he found that Petitioners had been provided the requisite written notice of the hearing and that the Department of Homeland Security ("DHS") had satisfactorily established their removability.  The IJ further held that the failure to appear constituted an abandonment of any applications for relief from removal that Petitioners "may have been eligible to file."  Accordingly, all three Petitioners were ordered removed to Guatemala.

## B

On December 6, 2019, Petitioners filed three essentially identical motions to reopen their removal proceedings.  The gravamen of the motion was that Petitioners could establish sufficient grounds for having failed to appear at the hearing and that reopening should be granted so that Montejo-Gonzalez could submit an application for asylum.

Specifically, the motion referenced the regulation that restates the statutory authorization to set aside *in absentia* removal orders when the alien "demonstrates that the failure to appear was because of exceptional circumstances as defined in section 240(e)(1)" of the INA.  8 C.F.R. § 1003.23(b)(4)(ii) (2019) (referencing the definition in 8 U.S.C.      § 1229a(e)(1));      *see      also*      8 U.S.C. § 1229a(b)(5)(C)(i) (authorizing rescission in such cases of "exceptional circumstances").[2]  In arguing why their failure

---

[2] The motion actually mistakenly cited "8 CFR § 3.23(b)(4)(ii)," but the intended reference is clearly to § 1003.23(b)(4)(ii).  Prior to 2003, the relevant regulation on reopening was contained in § 3.23, but it was transferred to § 1003.23 on February 28, 2003.  *See* 68 Fed. Reg. 9824, 9830 (Feb. 28, 2003).  The motion also confusingly cited, and made

to appear should be excused, Petitioners stated that they "did not appear in Immigration Court in Seattle, Washington on October 31, 2019 because they miscalculated time of arrival to court and there were two major accidents on the roads leading to court on that day." Petitioners stated that they arrived at the court "at around 10:30 am" and that, by that time, the "Master Hearing Calendar" before the IJ "was already adjourned." The motion further stated that Montejo-Gonzalez spoke with immigration court clerks who told her that "the court hearings for that day were already over," that an *in absentia* order had been entered against Petitioners, and that she would need to submit a motion in order to reopen their cases.

These contentions were elaborated in a declaration from Montejo-Gonzalez that was attached to the motion. The declaration stated, in the relevant part:

> The main reason that I did not appear is because there was heavy traffic on the way to the court, and because of my miscalculation of time of how long it takes to arrive to the court. There were two major accidents on the way to court that morning and as a result we were going very slow. One auto accident was in Federal Way, Washington and other one I

---

substantive reference to, "INA § 240(b)(5)(C)(ii)" and "8 CFR 3.23(b)(4)[](iii)(A)(2)," which are the statute and regulation that address rescission based on failure to receive the notice of hearing. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2). But the factual recitation in the motion makes clear that Petitioners were well aware of the hearing date, time, and location, and so it is clear that they had actually received the NOH. Petitioners do not contend otherwise in this court.

am not sure about the exactly as I am not yet very familiar with Seattle area. I was not the driver of the car, I had one of my friends from Bremerton, Washington to give me and my children ride to the Court. I took the pictures of the accidents because I just had a feeling that I am going to need them. Now I have printed these pictures and I am submitting them as Exhibit 2 attached to my motion.

We left our house on that day at around 6:45 am. According to my brother who lives in state of Washington area for two years now it usually it takes about an hour and half to get to Seattle downtown from where we live, and this is why we left at 6:45 am. However, because of the accidents we were very late to the Immigration Court. After getting to downtown Seattle and to looking for parking we arrived to court at around 10:30 am.

After describing Montejo-Gonzalez's discussions with the court clerks, the declaration stated:

Based on the foregoing I respectfully request to excuse my tardiness, it was really caused by circumstances beyond my control, however I do realize that it was my fault as well, and that I should have arranged for proper transportation to come to Court on time or even early. I solemnly promise to this Honorable Court that I will never be late again, and I am respectfully asking to reopen my case, so I that have a chance to present my

I-589 [asylum] application before this Honorable Court.

As to what claims Petitioners would assert in a reopened removal hearing, the motion expressly conceded that Petitioners were removable, and the motion stated that it "only present[ed] an application for relief." Specifically, the motion referenced only Montejo-Gonzalez's "I-589 application for Asylum and related forms of relief," and that completed application was attached, with exhibits, to the motion to reopen. Montejo-Gonzalez's application sought asylum, withholding of removal, and relief under the Convention Against Torture. Montejo-Gonzalez's two children did not submit separate applications and were only listed as derivative beneficiaries on their mother's application for asylum. *See Ali v. Ashcroft*, 394 F.3d 780, 782 n.1 (9th Cir. 2005) (stating that derivative relief is available only with respect to asylum).

As set forth in an accompanying unsworn affidavit from Montejo-Gonzalez, her asylum claim was based on the contention that, after being followed several times in September 2018, she was later approached by a man named "Mateo," a "Mara gang" member accompanied by three other armed "Mara associates." Mateo threatened her and her children with a knife and a gun and told her that she would "be his girlfriend" and a Mara sex "slave or else [she] would end up like many others who failed to follow Mara." Montejo-Gonzalez claimed that, after she and her children continued to be followed by suspected Mara associates, she reported Mateo to the police. She said that the police told her Mateo had "lots of connections" with the Guatemalan police, that the police did not want to protect her, and that they advised her to stay in her apartment. The body of the

application (but not Montejo-Gonzalez's accompanying affidavit) claimed that the police had demanded a payment of 5,000 quetzales to protect her. The application attached an October 25, 2018 Guatemalan police report in which Montejo-Gonzalez recounted that she and her children were approached by an armed gang member who threatened her in an effort to get her to be his girlfriend. The application also attached a corroborating letter from a Guatemalan neighbor of Montejo-Gonzalez.

Although neither the motion nor Montejo-Gonzalez's supporting declaration made any reference to it, the motion also attached a letter to the IJ from Marvin Joel Francisco Jose, who lives in San Marcos, California and who identified himself as the father of Montejo-Gonzalez's children. The text of the letter is as follows:

> My name is Marvin Joel Francisco Jose, I am a resident of the United States and I am currently in the process of becoming a naturalized United States citizen with an upcoming interview appointment in December 2019. I am the father of Dany Juan Francisco-Montejo and Maria Natalia Francisco-Montejo, and their mother is Claudia Elena Montejo-Gonzalez. My children and their mother Claudia had an appointment with your court on the 31st of October 2019 and due to two major accidents on the way, they were delayed and prevented from arriving on time to their appointment. I understand that your time is valuable, Your Honor, and I respect the work you dedicate to these cases and I want to assure you that my

children and their mother Claudia fully intended to comply with the court appointment and with United States law, yet they were faced with such an exceptional situation. I offer you sincere apologies on their behalf and plead that you consider reopening their case. Should my children and their mother return to Guatemala, they will be in danger and at imminent risk of losing their lives and this is why I desperately implore your mercy on their case. I have and will support my children and their mother, evermore such that they will never be a burden to this great country. I have immense respect for the United States of America since I have had the privilege of admiring its great values of liberty and justice. I would like to express deep gratitude for your work in revising all that is included in this petition to reopen the case for my children and their mother. Thank you, Your Honor.

Attached to the letter was a notice from U.S. Citizenship and Immigration Services ("USCIS") scheduling an interview in San Diego on December 3, 2019 in connection with Francisco Jose's application for naturalization.

DHS filed a written opposition to Petitioners' motion. DHS argued that Petitioners had "failed to demonstrate that exceptional circumstances precluded their appearance for the scheduled hearing." In particular, DHS emphasized that "[m]isjudging travel time is not beyond the control of [Petitioners] and is not an exceptional circumstance."

On January 9, 2020, the IJ issued a written decision denying Petitioners' motion to reopen.  In concluding that Petitioners had failed to establish the requisite "exceptional circumstances," the IJ explained:

> The Court does not find that [Montejo-Gonzalez] has articulated a compelling circumstance that prevented her from appearing at her hearing.  *See Arredondo v. Lynch*, 824 F.3d 801, 806 (9th Cir. 2016) ("Traffic and trouble finding parking, standing alone, do not constitute exceptional circumstances justifying a motion to reopen.").  While a respondent is not required to demonstrate exceptional circumstances to reopen proceedings where the respondent arrives late to a hearing but the Immigration Judge is still on the bench, *see Perez v. Mukasey*, 516 F.3d 770, 774-76 (9th Cir. 2008), in this circumstance [Montejo-Gonzalez] clearly stated that the court's hearings had adjourned for the session when she arrived.  Indeed, the judge would have left the bench upon completion of the cases.

The IJ also denied the motion on the alternative ground that Montejo-Gonzalez had failed to establish a *prima facie* case for relief.  On this score, the IJ explained that, even assuming that the threats against her rose to the level of persecution, "the evidence in the record fails to demonstrate [Montejo-Gonzalez] suffered persecution on account of her membership in a legally cognizable particular social group" and that the evidence instead "suggest[ed] she was a victim of random crime."  The IJ further stated that, "[s]imilarly,

record evidence does not demonstrate [Montejo-Gonzalez] more likely than not would be found and killed by gang members" (citing 8 C.F.R. § 208.16(c)(2), which addresses relief under the Convention Against Torture).

## C

On February 4, 2020, Petitioners served by mail a motion asking the IJ to reconsider his ruling. The motion, which was received and docketed by the immigration court on February 5, noted that Francisco Jose had just recently been scheduled to be sworn in as a naturalized U.S. citizen on February 12, 2020. The motion argued that the IJ had erred by failing to consider that the two child Petitioners "may become United States citizens through derivative status of their father upon his completion of his naturalization process." The motion also asserted that the *Arredondo* case cited in the IJ's ruling was factually distinguishable in multiple respects. On February 10, 2020, DHS opposed the motion, arguing that Petitioners provided no new grounds to explain why they had failed to arrive at the court on time. DHS argued that it was "speculative" whether the children would be able to adjust their status in light of their father's impending naturalization. DHS contended that, even if the children were to be approved as "beneficiaries of a visa petition," they would still be "ineligible for adjustment of status" because they had been "neither admitted nor paroled into the United States."

Also on February 4, 2020, Petitioners filed by Federal Express a notice of appeal with the Board of Immigration Appeals ("BIA"), which received and docketed the notice on February 6. The notice concisely described, as the grounds for appeal, the same basic points made in the motion for reconsideration submitted to the IJ.

On February 12, 2020, the IJ issued an order denying the motion for reconsideration, holding that he lacked jurisdiction to consider the motion in light of Petitioners' filing of a notice of appeal with the BIA. *See* 8 C.F.R. § 1003.23(b)(1) (stating that an IJ may consider an appropriate motion to reconsider "unless jurisdiction is vested with the Board of Immigration Appeals").

In their ensuing merits brief before the BIA, Petitioners raised arguments comparable to those they had presented in the motion to reconsider. They also noted that Francisco Jose had in fact been naturalized on February 12, 2020, and a copy of his naturalization certificate was attached to the brief. In contrast to the motion for reconsideration, which had not mentioned Montejo-Gonzalez's asylum application at all, Petitioners' appeal brief mentioned it, but that mention was limited to the following concluding sentence of the brief: "[Petitioners] further respectfully request[] the Board of Immigration Appeals to vacate [Montejo-Gonzalez's] In an [*sic*] Absentia Order and remand this matter to the Immigration Court for individual consideration of her asylum petition on the merits." DHS filed a short opposing brief asking the BIA to affirm "by means of a brief order."

The BIA issued its decision on May 25, 2021. Expressly citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), the BIA "adopt[ed] and affirm[ed] the Immigration Judge's decision." The BIA, however, also added some further explanation for its decision.

Relying upon *Arredondo*, the BIA concluded that "[t]he traffic congestion, coupled with [Montejo-Gonzalez's] explanation that she miscalculated the time it would take to arrive at the court and a lack of showing that the Immigration Judge was still on the bench, do not constitute exceptional

circumstances to justify the reopening of [the] proceedings." The BIA rejected Petitioners' contention that *Arredondo* was distinguishable because it involved a "car's mechanical failure" rather than a "traffic jam" and because it did not involve a parent accompanied by minor children. As the BIA stated, "[i]rrespective of whether the nonappearance was due to a traffic jam or a mechanical issue, typical daily occurrences that may cause mishaps, delays, and oversight do not qualify as exceptional circumstances." The BIA noted that, based on Montejo-Gonzalez's own time estimates, she left at 6:45 AM for a drive that, without accidents, would typically take 90 minutes, thereby leaving herself only a 15-minute window "to park and go through security, notwithstanding any traffic delays." The BIA also held that, because Montejo-Gonzalez had "accepted responsibility for her minor children," the relevant analysis of exceptional circumstances was the same for all three Petitioners. "Without more," the BIA concluded, the difficulties Petitioners faced did not meet the statutory requirement that they not be "'less compelling' than the examples of circumstances listed in section 240(e)(1) of the [INA], such as 'battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien'" (quoting 8 U.S.C. § 1229a(e)(1)). The BIA also rejected, as factually distinguishable, Petitioners' reliance upon *Singh v. INS*, 295 F.3d 1037 (9th Cir. 2002) (hereinafter "*R. Singh*"), in which we held that an innocent misunderstanding as to the hearing time, after years of timely attendance at multiple hearings in which the alien was pursuing "a valid claim for relief from deportation," did not justify denying reopening of an *in absentia* removal order. *Id*. at 1040.

The BIA also held that Petitioners had failed to show any sufficient basis for relief from removal.  The BIA concluded that Montejo-Gonzalez's appeal brief had "not meaningfully addressed" the IJ's holding that she had failed to establish a *prima facie* case for asylum, and that the issue was therefore "waived."  The BIA also rejected Petitioners' arguments that the minor children had sufficiently shown their eligibility "to adjust their status" through their father.  Petitioners made no showing that, at the time of the scheduled hearing in October 2019, "there was an approved or pending family-based visa petition with U.S. Citizenship and Immigration Services filed by [the father] on the children's behalf."  Moreover, the BIA held, "absent a showing that the . . . minor children had lawful entry to the United States," they had not established that they met the requirements for adjustment of status under INA § 245(a).  *See* 8 U.S.C. § 1255(a).  To the extent that Petitioners relied on the father's certificate of naturalization that was issued after the IJ's ruling, the BIA held that, even if this submission were construed "as a motion to remand," the BIA denied the motion on the ground that Petitioners had "not shown that the proffered documentation would likely change the result in this case."

On June 24, 2021, Petitioners timely filed a petition for review in this court.  We have jurisdiction under § 242 of the INA to review the denial of a statutory motion to reopen removal proceedings.  *See* 8 U.S.C. § 1252; *Kucana v. Holder*, 558 U.S. 233, 250 (2010).

## II

In seeking rescission of their *in absentia* removal orders, Petitioners had to satisfy the demanding statutory standards for obtaining such relief.  In particular, by its express terms,

§ 240(b)(5)(C) of the INA sharply limits the authority to set aside an *in absentia* removal order.  That section provides:

> **(C) Rescission of order**
>
> Such an order may be rescinded only—
>
>   (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1)), or
>
>   (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 239(a) [8 U.S.C. § 1229(a)] or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.
>
> The filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge.

8 U.S.C. § 1229a(b)(5)(C).  Here, Petitioners concede that they received the written notice referenced in § 240(b)(5)(C)(ii), and they therefore rely only upon the "exceptional circumstances" provision contained in § 240(b)(5)(C)(i).  Because the plain language of the latter provision confirms that rescission of an *in absentia* removal order is authorized "only" if the alien "demonstrates" the requisite "exceptional circumstances," 8 U.S.C.

§ 1229a(b)(5)(C)(i), that showing is in all cases a necessary prerequisite to the granting of any such relief. Here, the agency properly held that Petitioners had not made that required showing.

## A

As noted, the statute expressly requires that "the alien demonstrate[] that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1))." 8 U.S.C. § 1229a(b)(5)(C)(i). The cross-referenced definition of "exceptional circumstances" in "subsection (e)(1)" is as follows:

> **(1) Exceptional circumstances**
>
> The term "exceptional circumstances" refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien.

*Id*. § 1229a(e)(1). Putting these two provisions together, it follows that the alien must show that "the failure to appear was [1] *because of* [2] exceptional circumstances" that [a] were "beyond the control of the alien" *and* [b] are *not* "less compelling circumstances" than specified matters affecting the alien or certain family members, such as "serious illness," "death," "battery," or "extreme cruelty." *Id*. § 1229a(b)(5)(C)(i), (e)(1) (emphasis added).

The requirement that the "failure to appear was *because of* exceptional circumstances" means that the alien must

demonstrate exceptional circumstances that *caused* the "failure to appear." Factors that have no causal connection to the alien's failure to appear at the hearing thus cannot supply the requisite exceptional circumstances, no matter how much a court may think that the factor ought to weigh in favor of allowing rescission. Congress has explicitly chosen to strictly limit the category of excuses that it is willing to allow for aliens who, despite having notice of their hearing, fail to show up, and we "lack the authority to rewrite the statute" to "soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 134 (2015) (citation omitted).

Here, the *only* circumstances that Petitioners' motion claimed had *caused* their failure to appear at their hearing were that Montejo-Gonzalez had "miscalculated" "how long it takes to arrive to the court" and that "there were two major accident[s] on the roads leading to court on that day." These proffered circumstances do not meet the statutory standard.

On this point, our decision in *Sharma v. INS*, 89 F.3d 545 (9th Cir. 1996), is squarely controlling. In *Sharma*, the petitioners "arrived at [their] deportation hearing between 45 minutes and 1 hour late due to traffic congestion and trouble finding parking," and they were ordered deported *in absentia*. *Id*. at 547. They filed a motion to reopen seeking rescission of those orders, but the IJ denied those motions and the BIA upheld that decision. *Id*. Construing the nearly identical language of the predecessor provision that was then contained in § 242B(c)(3) of the INA, *see* 8 U.S.C. § 1252b(c)(3) (1995), we held that the petitioners had not carried their burden to establish "that they failed to appear because of exceptional circumstances" that were "beyond the control of the alien" and that were not "less compelling"

than factors such as the "serious illness or the death of an immediate relative." *Sharma*, 89 F.3d at 547 (citations omitted). We expressly held that this standard was a stricter one than the "reasonable cause" standard that had previously governed rescission of *in absentia* orders. *Id*. Applying that stricter standard, we held that, because drivers must take into account the possibility of traffic issues in planning any trip, the petitioners' "traffic difficulties d[id] not qualify as exceptional circumstances beyond [the] [p]etitioners' control." *Id*.; *see also Perez v. Mukasey*, 516 F.3d 770, 774 n.2 (9th Cir. 2008) (explaining that *Sharma* was based on the premise that "[t]raffic and parking trouble are circumstances that an alien may fairly be expected to anticipate").

Here, as in *Sharma*, Petitioners missed their scheduled hearing because they failed to depart for the hearing in sufficient time to allow for the possibility that they would encounter traffic congestion on the way. As the BIA noted, Petitioners had left themselves essentially no margin of error at all—even if they encountered no traffic, their 6:45 AM departure for an expected 90-minute drive afforded them only 15 minutes to finding parking and get through building security to get to the courtroom by 8:30 AM. Petitioners' failure to allow any cushion for traffic issues is not a matter beyond their control, and their late arrival due to encountering significant traffic congestion is not an "exceptional circumstance[]" that was "beyond the control" of Petitioners. 8 U.S.C. § 1229a(b)(5)(C)(i), (e)(1). Nor are these circumstances even arguably equivalently "compelling" to "serious illness," "death," "battery," or "extreme cruelty." *Id*. § 1229a(e)(1). Under *Sharma*, this case is easy—the agency properly denied the motion to reopen.

Our decision in *Arredondo v. Lynch*, 824 F.3d 801 (9th Cir. 2016), further confirms this conclusion. There, we reiterated that, under *Sharma*, "[t]raffic and trouble finding parking, standing alone, do not constitute exceptional circumstances justifying a motion to reopen." *Id*. at 806. The petitioner in *Arredondo*, however, did not encounter traffic congestion, but instead experienced mechanical trouble and ultimately had "her car towed to a mechanic." *Id*. at 803–04, 806. By the time she arrived at the courthouse, she was five and a half hours late for her scheduled hearing, and the court was closed. *Id*. at 804. The IJ had ordered her removed *in absentia*, and her subsequent motion to reopen was denied. *Id*. at 804–05. We held that, even though "a car's mechanical failure is generally an unanticipated occurrence which is 'beyond the control of the alien,'" *id*. at 806 (quoting *Perez*, 516 F.3d at 774 n.2), "a car's mechanical failure" nonetheless "does not alone compel granting a motion to reopen based on 'exceptional circumstances,'" *id*. In reaching this conclusion, we emphasized that, given the late hour that the petitioner had left her home and the particular route she had chosen to drive, she had "left little margin for error." *Id*. We also noted that, when the car first experienced trouble, she did not park it and then use the ample cash she had with her "to reach the court on time, but instead had her car towed to a mechanic and prepaid for the repair." *Id*. She also took no steps to "contact her lawyer or the court to inform them of the problem." *Id*. Considering the "totality of the circumstances," we held that the requisite "exceptional circumstances" had not been shown. *Id*. (citation omitted). We underscored that the statutory standard "is a difficult burden to meet" and that the circumstances of the petitioner's case were not of a comparably "compelling"

nature as "the statutory examples" of illness, death, battery, or extreme cruelty involving the alien or a family member. *Id*. (citation omitted).

Here, in contrast to the mechanical trouble in *Arredondo*, Petitioners encountered an issue—traffic problems—"that an alien may fairly be expected to anticipate," *Perez*, 516 F.3d at 774 n.2, and such issues therefore do "*not* qualify as exceptional circumstances beyond Petitioners' control," *Sharma*, 89 F.3d at 547 (emphasis added). Because the petitioner in *Arredondo* had encountered an issue (mechanical trouble) that was beyond her control, we focused in that case on the other factors that *were* within her control, such as the failure to leave any "margin for error" and her failure to take any steps to contact the court once she encountered the problem. *See* 824 F.3d at 806. These considerations further confirm what *Sharma* already establishes, which is that Petitioners' circumstances were not "exceptional" ones that were "beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). As in *Arrendondo*, Montejo-Gonzalez left no margin for error, and when she encountered traffic trouble, she made no efforts to contact the court, even though (as her contemporaneous photos confirm) she had her cellphone with her in the car.

In light of our decisions in *Sharma* and *Arredondo*, the agency plainly did not abuse its discretion in concluding that the particular circumstances that Petitioners claimed *caused* their failure to appear were not outside their control and were not as comparably compelling as the statutory examples of death, serious illness, battery, or extreme cruelty involving Petitioners or a close family member. Because the statutory prerequisite for granting relief from an *in absentia* removal order was thus not met, the motions to reopen were properly rejected, and the petition for review here must be denied.

## B

The majority provides no persuasive grounds for its contravention of *Sharma* and *Arredondo*.

The majority relegates its discussion of *Sharma* to a footnote, purporting to distinguish the case on the ground that the petitioner there did not argue for the sort of multifactor test adopted by the majority here, under which "other circumstances in addition to the traffic and parking troubles would have justified reopening." *See* Opin. at 12 n.2. But *Sharma* correctly recognized and held that the statute requires that the failure to appear be "*because of* exceptional circumstances," and it therefore focused on the only causal factor presented in that case—namely, the asserted "traffic difficulties." 89 F.3d at 547 (emphasis added) (citation omitted). The same is true here—the *only* causal factors identified by Montejo-Gonzalez that led to her failure to appear were traffic trouble and her conceded lack of adequate planning. Under *Sharma*, those are not "exceptional circumstances," and the statutory minimum showing is therefore not met. *Sharma* is squarely controlling here.

The majority is likewise wrong in purporting to distinguish *Arredondo* on the ground that, in contrast to that case, Petitioners here supposedly "did everything they reasonably could to make it to court." *See* Opin. at 12. This assertion is simply untrue, both as a factual matter and as a legal matter.

It is factually false because, as the BIA noted, Montejo-Gonzalez left no margin of error at all in planning her trip to the immigration court: even under the best of circumstances she would arrive in the courthouse vicinity with only 15 minutes to spare, and those remaining minutes would be

needed to find parking, get through building security, and get to the courtroom. An alien who provides *no* allowance for possible traffic issues in planning her trip has manifestly not done "everything [she] reasonably could to make it to court," nor can she be said to have missed the hearing "through no fault of [her] own." *See id*. at 11–12. The fact that Montejo-Gonzalez took pictures of the traffic and ultimately showed up late at the court does not support a contrary finding. *See id*. at 12. Merely documenting circumstances that do not satisfy the statutory standard does not suddenly make them meet that standard. Moreover, the aliens in *Sharma* and *Arredondo* both also proceeded to continue to the courthouse, where (like Petitioners) they arrived too late, but we nonetheless still held that the statutory standard was not met. *Arredondo*, 824 F.3d at 804, 806; *Sharma*, 89 F.3d at 547. And Montejo-Gonzalez plainly also did not do "everything [she] reasonably could" have done because, as in *Arrendondo*, she made no effort to contact the immigration court from her cellphone to alert the court that she would be late. 824 F.3d at 806.

The majority's conclusion is also legally erroneous, because (as I have explained) we have repeatedly held that, because "[t]raffic and parking trouble are circumstances that an alien may fairly be expected to anticipate," *Perez*, 516 F.3d at 774 n.2, "traffic difficulties" generally "do not qualify as exceptional circumstances beyond Petitioners' control," *Sharma*, 89 F.3d at 547. *See also Arredondo*, 824 F.3d at 806 ("Traffic and trouble finding parking, standing alone, do not constitute exceptional circumstances justifying a motion to reopen."). The majority sidesteps this authority by noting that the particular traffic accidents that Petitioners happened to encounter "were beyond petitioners' control." *See* Opin. at 13. It is of course true that, unless the alien is

involved in the accident herself, the *occurrence* of any given accident that she encounters on the way to the courthouse will not be within her control. But our caselaw has not adopted that narrow focus in defining "circumstances . . . beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). Instead, we have asked whether the alien—who obviously can control her *planning* of her trip to the courthouse—left ample cushion for traffic and other contingencies that might occur along the way. *Arredondo*, 824 F.3d at 806.

The majority's analysis is further legally erroneous because it disregards the applicable standard of review, which is the deferential abuse-of-discretion standard. *Id.* at 805. Here, the agency reasonably concluded that Petitioners' late arrival due to traffic issues for which they had left no margin of error did not meet the statutory standard of "exceptional circumstances" that were "beyond the control of the alien" and that were no "less compelling" than the statutory examples of serious illness, death, battery, or extreme cruelty to the alien or an immediate family member. 8 U.S.C. § 1229a(e)(1). Even if the majority would disagree with that determination under a de novo review, the agency's conclusion is well within the range of reasonable applications of the statutory standard to the particular facts of this case.

## C

The majority's disregard of our decisions in *Sharma* and *Arredondo*, which dictate the outcome in this case, is troubling enough. But the majority goes even further and effectively rewrites the statute to replace its strict standard with a much more flexible one. The majority's disregard of the statutory language and of our caselaw construing it is deeply flawed and provides no support for its holding.

## 1

As noted earlier, in cases where (as here) the alien received the required notice of the hearing, the plain language of the statute affirmatively precludes rescission of an *in absentia* order unless the alien establishes that "the failure to appear was because of exceptional circumstances" that were "beyond the control of the alien" and that are not "less compelling circumstances" than the specified statutory examples. 8 U.S.C. § 1229a(b)(5)(C)(i), (e)(1). As we have held, "this is a difficult burden to meet," *Arredondo*, 824 F.3d at 806 (citation omitted), and it reflects Congress's explicit decision to sharply limit the excuses that it is willing to accept for aliens not showing up at their removal hearings. As we noted in *Sharma*, under the prior version of the statute, "an alien's motion to reopen a deportation hearing held in absentia would be granted if the alien could show '*reasonable cause*' for being absent from the proceedings." 89 F.3d at 547 (emphasis added). Here, the majority's opinion effectively amends the statute to restore the more flexible sort of standard that Congress eliminated.

In place of the current, strict statutory language—which focuses *only* on whether the alien's failure to appear was *caused* by "exceptional circumstances" that were "beyond the control of the alien" and that are no "less compelling" than the extreme statutory examples—the majority reframes the applicable standard as more broadly considering whether exceptional circumstances "*warrant* reopening" or "*justify* a noncitizen's failure to appear." *See* Opin. at 5, 7 (emphasis added); *see also id*. at 7 (stating that the question is whether "exceptional circumstances warrant reopening the[] proceedings"); *id*. at 17 (ordering reopening because, in the majority's view, Petitioners "demonstrated exceptional circumstances warranting relief"). The use of this phrasing

in the majority opinion is not (as it has been in prior cases) merely a loose way of summarizing an analysis that otherwise comports with the statutory language. By instead generalizing such phrases as supplying the governing test, the majority is able to place dispositive weight on factors (such as whether Petitioners have potentially meritorious claims or whether Petitioners were motivated to skip their hearing) that *have no conceivable causal relationship* to Petitioners' failure to appear in this case. Indeed, under the majority's rewriting of the statutory standard, the agency is now *required* to expressly tick through a punch list of prescribed non-statutory factors, as part of an overall assessment into whether the circumstances are sufficiently exceptional to "warrant" or "justify" reopening and to avoid "unconscionable results." *See* Opin. at 7–8, 17. Thus, even though such factors ordinarily bear no causal relation at all to an alien's failure to appear for a particular hearing, the BIA now *must* in every case consider, *inter alia*, whether the alien's claim is potentially meritorious and whether the alien had a motivation to deliberately avoid the hearing. *See* Opin. at 13–16. Any failure to expressly address one of these factors, the majority holds, is legal error. *See id*. The majority's loosely framed test bears no relation to the stringent statutory standard that Congress adopted.

The majority insists that we have already previously adopted this more broadly focused and lenient test, but that is wrong. The cases cited by the majority do *not* stand for the proposition that the majority adopts today, which is that the "exceptional circumstances" inquiry is a flexible one that allows a court to rely on a variety of justifications for allowing reopening, even if they lack any causal connection to the alien's failure to appear and even if they do not meet the statute's stringent language. Instead, these cases simply

recognized that a *causal* factor—such as a memory problem or a misunderstanding as to the hearing date—may be so exceptional in the context of the unusual circumstances of a particular alien's case that it satisfies the demanding statutory standard.

Thus, for example, we held in *R. Singh* that, in the "highly unusual" circumstances of that case, a particular alien's confusion as to the hearing time was so inconsistent with the alien's repeatedly demonstrated diligence that the alien's error counted as an "exceptional" circumstance that caused the failure to appear. 295 F.3d at 1038, 1040. The alien in *R. Singh* had appeared at no less than five hearings over a two-year period in a diligent effort to pursue what we recognized was "a valid claim for relief from deportation." *Id*. at 1038–40. Given that the larger context made clear that the alien's one instance of reasonable misunderstanding was an exceptional lapse, we held that the statutory standard was met. *Id*. at 1040. And given that the claim had apparent merit and a failure to reopen would "lead[] to the unconscionable result of deporting an individual eligible for relief from deportation," we held that the agency was required to reopen the deportation proceedings and consider the claim. *Id*.

We reached a similar conclusion in *Chete Juarez v. Ashcroft*, 376 F.3d 944 (9th Cir. 2004), which we held "presented unusual facts like those presented" in *R. Singh*. *Id*. at 948. In *Chete Juarez*, the petitioner failed to appear at her immigration court hearing on remand from her *successful* appeal to the BIA. *Id*. at 947. The petitioner submitted a sworn declaration stating that she had filed a change-of-address form during the pendency of her appeal. *Id*. However, because the immigration court did not receive the form, the court mailed the subsequent notice of hearing

to the old address, and the petitioner never received it. *Id*. We held that, just as in *R. Singh*, the relevant circumstances that led to the petitioner's failure to appear were exceptional. *Id*. at 948. As in *R. Singh*, any lapse that occurred was wholly out of character with the long-demonstrated diligence with which the petitioner had expended literally "years of efforts to regularize her status" by pursuing a claim that we held was "likely" to succeed. *Id*.

Likewise in *Hernandez-Galand v. Garland*, 996 F.3d 1030 (9th Cir. 2021), we concluded that the petitioner had established exceptional "impediments" that "*caused* her" to miss her scheduled hearing. *Id*. at 1035 (emphasis added). As we explained, the petitioner in that case had "trauma-inflicted memory problems" resulting from having "been kicked in the head by a horse as a child." *Id*. The resulting chronic "memory problems" caused her to forget the immigration court's oral advisement of the hearing date, meaning that she then had to place dispositive reliance on her written hearing notice. *Id*. at 1033, 1035. But on top of her memory problems, the petitioner was illiterate, and so she had to rely on her relatives "to interpret the notice of hearing for her." *Id*. at 1035. Because that notice "only provided a numerical date for the hearing, '07/12/2016,'" her relatives, who were from Latin America, read that date "based on how numerical dates in Latin America (and most of the rest of the world) are typically written, with the day appearing before the month." *Id*. at 1033. Based on this unusual confluence of interlocking errors, the petitioner thought that her hearing was scheduled for December 7, when it was actually set for July 12. *Id*. We held that these factors amounted to "circumstances beyond her control." *Id*. at 1035. In further concluding that these causal factors were exceptional, we also noted that the petitioner had previously

been "diligent in making all appearances" and that she had no incentive to abandon pursuit of her and her child's claims for relief from removal, which were "not baseless." *Id*. at 1036–37.

Similarly, in *Singh v. Garland*, __ F.4th __, 2024 WL 4207027 (9th Cir. 2024) (hereinafter "*V. Singh*"), we noted that there were substantial grounds to conclude that the petitioner's attorney was ineffective in failing to enter a notice of appearance in the immigration court—which led to the attorney not being served with an updated hearing notice that *advanced* the petitioner's hearing by more than two years. *Id*. at *2, *4. That significant omission *was* a causal factor in the petitioner's failure to show up at his rescheduled hearing, as was the fact that the friend with whom he was living had failed to forward the notices that were sent to the different mailing address that the friend had told him to use. *Id*. at *2. We held that the BIA erred in summarily discounting the attorney's causal role based on the legally erroneous premise that the petitioner had to satisfy the formal requirements for asserting an ineffective assistance of counsel claim under *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988).[3] *See V. Singh*, 2024 WL 4207027, at *4– 5. Given the resulting "lack of analysis" of this significant

---

[3] *Lozada* generally requires that, in order to establish that an attorney's ineffectiveness rose to the level of a due process violation warranting relief from a removal order, the following requirements must be met: (1) the petitioner must present "an affidavit . . . attesting to the relevant facts"; (2) "former counsel must be informed of the allegations and allowed the opportunity to respond"; and (3) "if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." 19 I. & N. Dec. at 638–39.

causal factor, we remanded for reconsideration of the totality of the circumstances by the BIA. *Id*. at *5. We also instructed the BIA to consider the "merits of [the] petitioner's pending claim for relief" and whether "failure to reopen would lead to the unconscionable result of deporting an individual eligible for relief." *Id*. at *3 (simplified). But, once again, we did so in the context of a case in which there *was* a causal factor that might meet the statutory standard, and in that situation, such considerations could be relevant to assessing the petitioner's diligence.

Accordingly, none of these cases support the majority's decoupling of the statute's "exceptional circumstances" requirement from the statute's requirement of a *causal* connection between those circumstances and the alien's failure to appear. In *V. Singh*, there was an external causal factor—alleged ineffective assistance of counsel—that potentially satisfied the statutory standard and that had to be considered together with other relevant circumstances. In *R. Singh*, *Chete Juarez*, and *Hernandez-Galand*, there was no such external factor, but we held that, where an alien has affirmatively demonstrated a consistent pattern of diligence in vigorous pursuit of a potentially meritorious claim, a single isolated lapse that might by itself seem unexceptional, can be deemed, in light of all of the circumstances, to be an exceptional cause of the failure to appear. It is thus *in the context of assessing the exceptionality of a causal factor* that our cases have faulted the agency for failing to consider an alien's motive to avoid the hearing and the merits of an alien's claim. *See*, *e.g.*, *Hernandez-Galand*, 996 F.3d at 1036.

But in many, if not most cases, the alien will be unable to demonstrate *any* causal factor (1) that was beyond the alien's control, (2) that is no less compelling than death,

serious illness, battery, or extreme cruelty, and (3) that led to the alien's failure to appear.  In such a case—and this is one of them—it is irrelevant under the statute whether the alien had innocent motives or has meritorious claims.  Here, Montejo-Gonzalez missed the hearing because she concededly "miscalculated" the time it would take to arrive at the court, leaving herself no margin of error for potential traffic or other logistical issues.  As our controlling precedent makes clear, that was not a factor "beyond the control of the alien"; it is not an "exceptional" causal factor, even in full context; and it is not as comparably compelling as the statute's list of genuinely extreme examples.  Because Petitioners have not satisfied the mandatory minimum showing required by the statute, the BIA properly denied reopening.  Until today, we have *never* held that, in the complete absence of the statutorily required exceptional causal factor, an *in absentia* order can be set aside because in our view it would be "unconscionable" to adhere to the statute's strict language.  *See* Opin. at 17.  We have no authority to rewrite the statute, as the majority does here, to allow reopening based dispositively on non-statutory factors that in our view, *ought* to be sufficient.  *Baker Botts*, 576 U.S. at 134.**[4]**

---

[4] The majority's contention that the Government's answering brief supposedly endorsed this new test is flatly incorrect.  Opin. at 9 n.1.  On the cited pages, the Government merely quotes verbatim language from *Hernandez-Galand* (which, as I have explained, the majority misconstrues) before then arguing that *Sharma* is controlling and that the other cases cited by Petitioners are all distinguishable.  Equally unfathomable is the majority's suggestion that my adherence to the plain statutory language at issue and to the *Sharma* and *Arredondo* cases cited by the Government somehow violates the "principle of party

**2**

Although the majority does not cite it, I acknowledge that there is one snippet of dicta in *Chete Juarez* that could be read, in isolation, to support the majority's position.  In describing *R. Singh*, *Chete Juarez* stated in passing that, even though the statutory language unmistakably requires a causal link between the asserted exceptional circumstances and the failure to appear, a court may find exceptional circumstances on *other* grounds "even where the petitioner missed her hearing *because of unexceptional circumstances*."  *Chete Juarez*, 376 F.3d at 948 (emphasis added).  However, for multiple reasons, this comment in *Chete Juarez* cannot support the majority's ruling.

First, because (as I have explained) the facts and reasoning of *Chete Juarez*, like those of *R. Singh*, *Hernandez-Galand*, and *V. Singh*, involved a potentially *exceptional* lapse by the petitioner (or the petitioner's counsel) that *caused* the petitioner's absence from the hearing, this comment in *Chete Juarez* is pure, unreasoned dicta.

Second, our caselaw before and after *Chete Juarez* has repeatedly confirmed that the plain text of the statute requires a causal connection between the exceptional circumstances that were beyond the alien's control and the

---

presentation."  *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *see* Opin. at 9 n.1; *see also Does v. Wasden*, 982 F.3d 784, 793 (9th Cir. 2020) (reaffirming that *Sineneng-Smith* does not alter the settled rule that "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law" (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991))).

alien's failure to appear.  *See, e.g.*, *Cui v. Garland*, 13 F.4th 991, 1000 (9th Cir. 2021) (reaffirming that a motion to rescind under INA § 240(b)(5)(C)(i) requires a showing of "exceptional circumstances beyond [the alien's] control that *caused* her to miss her original merits hearing" (emphasis added)); *Hernandez-Galand*, 996 F.3d at 1034 (holding that the statute requires a showing of a "severe impediment" to the alien's appearance at the hearing (citation omitted)); *Monjaraz-Munoz v. INS*, 327 F.3d 892, 896 (9th Cir. 2003) ("When analyzing what constitutes an exceptional circumstance, courts and agencies *must* determine if an alien's failure to appear at a hearing *was due* to a circumstance 'beyond the control of the alien.'" (emphasis added) (citation omitted)), *amended on other grounds on denial of rehearing by Monjaraz-Munoz v. INS*, 339 F.3d 1012 (9th Cir. 2003); *Singh-Bhathal v. INS*, 170 F.3d 943, 946–47 (9th Cir. 1999) (holding that the statute requires a showing of a "similarly severe impediment" to appearance as the listed statutory examples).  We are not free to invoke dicta that is at odds with long-established holdings that faithfully follow the statutory text.

Indeed, when a sharply divided panel of this court adopted a broad reading of *R. Singh* and *Chete Juarez* that resembles the majority's test, *see Vukmirovic v. Holder*, 621 F.3d 1043 (9th Cir. 2010), the Government petitioned for rehearing en banc, asking the en banc court to overrule the entire line of cases as being plainly contrary to the statutory language, *see* No. 05-75936, Dkt. 47, at 9–14.  The panel then took the "unusual step" of withdrawing its opinion and replacing it with a contrary one that denied reopening.  *See Vukmirovic v. Holder*, 640 F.3d 977, 978 (9th Cir. 2011).  In doing so, the panel candidly acknowledged that its original opinion "constituted a departure from Ninth Circuit

precedent and interpreted too broadly the 'exceptional circumstances' safe harbor for aliens removed in absentia." *Id*. (citation omitted).  The panel then narrowly construed *R. Singh* and *Chete Juarez* as cases involving "much more unusual circumstances" in which the petitioner had "demonstrate[d] the diligence *necessary* for a finding of exceptional circumstances."  *Id*. at 978–79 (emphasis added).  We thus squarely rejected a broad reading of *R. Singh* and *Chete Juarez* and affirmed that those cases should be narrowly construed as applying—rather than eliminating—the irreducible statutory requirement that the alien must show exceptional circumstances that *led* to the alien's absence.  *See id*.

Third, the Supreme Court recently reiterated that, under the "exceptional circumstances" clause of § 240(b)(5)(C)(i), "relief is *conditioned* upon the alien's showing he was *not at fault* for failing to appear." *Campos-Chaves v. Garland*, 602 U.S. 447, 144 S. Ct. 1637, 1649 (2024) (emphasis added) (citation omitted).  The *Chete Juarez* dicta—which would allow reopening even where the alien is at fault for "miss[ing] her hearing because of unexceptional circumstances," 376 F.3d at 948—is directly contrary to this clear instruction from the Supreme Court, which we lack any authority to defy.

\*          \*          \*

Because, under our controlling caselaw, Petitioners failed to satisfy the statutory standard set forth in INA § 240(b)(5)(C)(i), the agency did not abuse its discretion in denying reopening.  The petition for review should be denied.

## III

Although Petitioners' failure to show the requisite "exceptional circumstances" is alone sufficient to require denial of their petition for review, I also conclude that the BIA correctly denied reopening on the alternative ground that Petitioners' motion to reopen did not include a *prima facie* showing of entitlement to relief from removal. On this point, the majority again defies the statutory text in announcing the bright-line rule that aliens seeking reopening under § 240(b)(5)(C)(i) are "not required to show a likelihood of success on the merits to prevail on their motion to reopen." *See* Opin. at 15.

As I have noted, § 240(b)(5)(C) expressly states that an *in absentia* removal order "may be rescinded *only* . . . upon a motion to reopen filed" within the time specified in, and making the showing required by, either clause (i) (concerning "exceptional circumstances") or clause (ii) (concerning the alien's failure to receive the required written notice). 8 U.S.C. § 1229a(b)(5)(C). Congress's specification that rescission may be sought only by way of filing a "motion to reopen" is significant, because another subsection of § 240 sets forth a number of specific requirements that apply to any "motion to reopen." *See id*. § 1229a(c)(7). Those requirements therefore apply in this context as well.[5] That conclusion is further confirmed by the fact that, in setting forth the general requirements for motions to reopen, § 240(c)(7) prescribes various timing requirements, and those timing provisions contain an explicit carve-out for "a motion to reopen an order entered pursuant to subsection (b)(5)," *i.e.*, an *in absentia* order. *Id*.

---

[5] The majority simply ignores this obvious textual point, which vitiates its analysis.

§ 1229a(c)(7)(C)(iii) (citing *id*. § 1229a(b)(5)). Such motions, the exception states, are instead "subject to the deadline specified in subparagraph (C) of such subsection," *i.e.*, § 240(b)(5)(C). *Id*. There would have been no need for Congress to insert this express carve-out from *one* of § 240(c)(7)'s general requirements for "motions to reopen"—*i.e.*, the timing requirement—if those general requirements did not apply in the first place to motions to rescind under § 240(b)(5)(C). In these respects, both the text of § 240(b)(5)(C) and the text of § 240(c)(7) confirm that the latter provision applies to motions to reopen addressed to *in absentia* removal orders.

One of the general requirements applicable under § 240(c)(7) is that any "motion to reopen shall state the new facts that will be proven *at a hearing to be held if the motion is granted*, and shall be supported by affidavits or other evidentiary material." *Id*. § 1229a(c)(7)(B) (emphasis added). The statute's reference to a hearing to be held *after* the motion to reopen "is granted" cannot be understood as referring to any hearing that may be needed to determine whether the alien has made the threshold showing that is required to decide *whether* to reopen (such as the "exceptional circumstances" showing required by § 240(b)(5)(C)). Rather, it unmistakably refers to a hearing concerning the *merits* of the reopened removal proceedings—*i.e.*, whether the alien is removable and whether the alien is eligible for any relief from removal. The plain text of the statute thus requires that a motion to reopen aimed at an *in absentia* removal order must satisfy both (1) the applicable requirement of § 240(b)(5)(C), which here is the showing of "exceptional circumstances"; and (2) the applicable requirements of § 240(c)(7), including the required showing as to the "new facts" that will be proven,

if reopening is granted, with respect to the merits of the petitioner's removal proceedings.[6]   While that does not require a showing that the alien is entitled to relief from removal, it at least requires a showing of a *prima facie* case on that score. *Tadevosyan v. Holder*, 743 F.3d 1250, 1255 (9th Cir. 2014).

Petitioners manifestly did not make such a *prima facie* showing in support of their motion to reopen here.   As I noted above, the body of the motion to reopen, as well as Montejo-Gonzalez's declaration in support of that motion, *only* sought reopening so that Montejo-Gonzalez could "present her application for Asylum," with her children as riders to that application.[7]   The IJ concluded that Montejo-Gonzalez's accompanying formal asylum application failed

---

[6] What counts as "new facts" in the *in absentia* context, where there has been no merits hearing at all, would not necessarily be the same as in other contexts.  For example, § 240(c)(7)(C)(ii) further specifies that the new facts in support of a motion to reopen under that subsection—which allows an alien at any time to seek reopening to pursue an asylum or withholding-of-removal application based on changed country conditions—must be based on material evidence that "was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(C)(ii).  The statute does not itself incorporate any such express specification in the *in absentia* context, which is addressed in § 240(c)(7)(C)(iii).  And even if a comparable requirement that the evidence must have been previously unavailable is applicable when defining what counts as "new" vis-à-vis a prior merits hearing, *see Dada v. Mukasey*, 554 U.S. 1, 14 (2008) (citing 8 C.F.R. § 1003.2(c)(1) (2007)), the same is not necessarily true in the *in absentia* context.

[7] The majority errs to the extent that its out-of-order recounting of the facts creates the misimpression that Petitioners applied for asylum *before* their *in absentia* removal orders.  *See* Opin. at 5–6 (mentioning the asylum application first, as if it had been filed before the *in absentia* removals).

to establish a *prima facie* case for asylum, withholding of removal, or relief under the Convention Against Torture. On appeal, the BIA concluded that, by failing to meaningfully address that subject in their appeal brief, Petitioners waived any challenge to the IJ's ruling concerning their failure to establish a *prima facie* case.

Notwithstanding Petitioners' forfeiture of the issue, the majority concludes that the agency "erred by holding that Ms. Montejo-Gonzalez failed to make a prima facie showing that she qualified for asylum." *See* Opin. at 15. Despite this phrasing, it appears that what the majority means to say is, not that Montejo-Gonzalez *did* establish a *prima facie* case, but only that she was not *required* to do so. *See* Opin. at 15–16. I agree that she was not required to do so as part of the "exceptional circumstances" inquiry, because (as I have explained), the merits of the alien's underlying case are only relevant to that inquiry in highly unusual cases such as *R. Singh*, *Chete Juarez*, *Hernandez-Galand*, and *V. Singh*. And I agree that, in such unusual cases, the petitioner does not need to make a *prima facie* showing in order to establish, for example, that the petitioner's longstanding pursuit of a potentially meritorious claim is relevant to determining whether the petitioner's unusual lapse counts as "exceptional." *See Hernandez-Galand*, 996 F.3d at 1036–37. But that does not mean that the agency erred in denying Petitioners' motion on the alternative ground that they had to establish a *prima facie* case *in addition* to showing exceptional circumstances and that they failed to do so.[8] For

---

[8] We do not appear to have previously addressed the question whether, in the context of a motion to reopen challenging an *in absentia* removal order, a *prima facie* showing on the merits is required in addition to the

the reasons I have explained, that alternative holding was correct.

The majority further states that the IJ erred in failing to address whether the child Petitioners "are eligible to seek derivative citizenship through their father." *See* Opin. at 5. But the IJ cannot be faulted for "failing" to address a contention that was not presented in the motion to reopen. The only even remote hint of such an issue in the motion-to-reopen papers was in the supporting letter from Francisco Jose, the children's father, who mentioned that he was "currently in the process of becoming a naturalized United States citizen with an upcoming interview appointment in December 2019." But apart from mentioning that background fact, his letter says nothing at all about his

---

threshold "exceptional circumstances" requirement. I note that the Sixth Circuit has, and it reached the opposite conclusion from the one I would reach. *See E.A.C.A. v. Rosen*, 985 F.3d 499, 508–09 (6th Cir. 2021). Without properly analyzing the text as set forth above, the Sixth Circuit wrongly held that the particular showing that is *necessary* for reopening under § 240(b)(5)(C) is also *sufficient* for reopening, and that motions to reopen under § 240(b)(5)(C) are therefore exempt from the generally applicable requirement under § 240(c)(7) that motions to reopen must include a showing of a *prima facie* case for relief from removal. *See E.A.C.A.*, 985 F.3d at 508–09. The Sixth Circuit was also mistaken in suggesting that its conclusion followed from circuit cases (including from this court) holding that a *prima facie* showing is not required to obtain reopening of an *in absentia* removal order based on a claim of *ineffective assistance of counsel*. *Id*. at 509 (citing, *inter alia*, *Lo v. Ashcroft*, 341 F.3d 934, 939 n.6 (9th Cir. 2003)). The no-prejudice rule of *Lo* is unique to ineffective-assistance claims and does not support the broader rule that the Sixth Circuit adopted. *See Sanchez Rosales v. Barr*, 980 F.3d 716, 717 (9th Cir. 2020) (citing *Lo* for the proposition that "[a] showing of prejudice is not required when *ineffective assistance* leads to an in absentia order of removal" (emphasis added)); *id*. at 721–23 (VanDyke, J., dubitante) (tracing the development of the *Lo* rule).

possibly later sponsoring his children for citizenship. Instead, the text of the letter is devoted to arguing that Petitioners should be excused for having arrived too late for the hearing and that Petitioners would "be in danger and at imminent risk of losing their lives" if returned to Guatemala. The IJ was not required to ferret out a claim for relief that Petitioners never raised in their motion to reopen. Although Petitioners subsequently squarely raised the issue of adjustment of status for the children in a motion to reconsider that they filed before the IJ, the IJ correctly concluded that he lacked jurisdiction to consider the merits of that motion in light of the fact that Petitioners had already appealed the case to the BIA. On this record, there simply are no grounds for concluding that the IJ erred on this score.

Petitioners did raise the adjustment-of-status issue in their appeal to the BIA, and the BIA decided the issue on the merits rather than relying on the ground that the issue had not been properly raised below. The BIA held that Petitioners had "not sufficiently demonstrated their eligibility for adjustment of status," because (1) they made no showing "that there was an approved or pending family-based visa petition with [USCIS] filed by [the father] on the children's behalf at the time of the scheduled hearing," and the new documentation submitted on appeal did not show that such an application had been filed, nor would such documentation change the result; and (2) "absent a showing" that the child Petitioners "had lawful entry to the United States," they had not "sufficiently demonstrated their eligibility for adjustment of status." Neither of those holdings was an abuse of discretion. The filing and approval of a sponsorship application is a prerequisite to seeking family-based adjustment of status, *see Khachatryan v. Blinken*, 4 F.4th 841, 847 (9th Cir. 2021), and an alien

unlawfully present in the United States is inadmissible and therefore ineligible for adjustment of status, absent an applicable waiver or change in circumstances, *see* 8 U.S.C. §§ 1182(a)(6)(A)(i), 1255(a).    The majority thus significantly overstates matters when it summarily declares that the child Petitioners "are eligible to seek derivative citizenship through their father." *See* Opin. at 5.  Citizenship would be the end result of a long process as to which Petitioners had not shown that they had taken even the first step.[9]

## IV

For all of the reasons I have explained, the majority's decision today is contrary to controlling precedent and impermissibly rewrites clear statutory language.   The majority's deeply flawed decision is particularly regrettable, because its extravagant loosening of the strict statutory standard is likely to result in significant disruption to an already overburdened immigration system.  In Fiscal Year 2023, more than 159,000 *in absentia* removal orders were issued nationwide, representing a remarkable 69% of all

---

[9] The majority is also factually wrong in contending that the *in absentia* removal orders here would impose the "harm of separating the children from the father," thereby "breaking up the family."  *See* Opin. at 15. There is no support in the record for the majority's supposition that there is such an intact family to break up, because nothing in the record suggests that the father intends to live with the children.  Francisco Jose lives in San Diego County, where he is apparently married to someone else, whereas Montejo-Gonzalez is unmarried and she and her children live in Bremerton, Washington, near her brother.  Although the BIA at one point mistakenly referred to Francisco Jose as Montejo-Gonzalez's "husband," the record contradicts that assumption.  Montejo-Gonzalez's asylum application lists her marital status as "single," and her motion to reconsider the denial of her motion to reopen only refers to Francisco Jose as the children's father and not as her husband.

removal orders that year. *See* Cong. Research Service, *FY2023 Immigration Court Data: Case Outcomes* at 2 (Feb. 7, 2024). Tens of thousands of those orders were undoubtedly issued within this circuit, and aliens who can assert timely challenges (or invoke equitable tolling) may now all seek reopening under the majority's flexible standards. That, in turn, will require the immigration courts to consider each of the various factors on the majority's mandatory punch list in assessing whether reopening is "warranted." We have no right to replace the more easily administrable, strict standard that Congress adopted, nor do we have the right to impose the resulting burdens on an already far-too-overtaxed system.

For the foregoing reasons, I respectfully but emphatically dissent.